IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES ROY <br><br> vs. <br><br> SULLAIR CORPORATION, <br> and <br> GILES & RANSOME | : <br> : <br> : <br> : 2:09-cv-01486-MMB <br> : <br> : <br> : <br> : |

### DEFENDANT GILES & RANSOME INC.'S
### MOTION FOR SUMMARY JUDGMENT

Defendant, Giles & Ransome, Inc., (hereinafter, "Moving Defendant"), by and through its attorneys, Weber Gallagher Simpson Stapleton Fires & Newby LLP, hereby files this Motion for Summary Judgment against Plaintiff, James Roy, and in support thereof, avers as follows:

I.   **FACTS**

1.   Plaintiff, James Roy, filed a Complaint against Moving Defendant alleging he was injured during the course of his employment on February 10, 2007, while operating an air compressor supplied by Moving Defendant.  See Plaintiff's Complaint, attached hereto as Exhibit "A," at ¶5.

2.   On February 10, 2007, Plaintiff was employed by Compass Environmental, Inc. (hereinafter, "Compass") at the Old Foot Mineral plant in Malvern, Pennsylvania.  See id.

3.   This accident occurred towards the end of Plaintiff's shift at approximately 5:40 a.m. on February 10, 2007.  See Volume II of Plaintiff's deposition transcript, attached hereto as Exhibit "B," at p. 21, lines 6 – 10, p. 62, lines 1-5.

4.   At the time, Plaintiff allegedly was using an air compressor to clean out a grout line.  See id. at p. 20, lines 5-11.

5.   A grout line is essentially a three inch hose.  <u>See</u> Volume I of Plaintiff's deposition transcript, attached hereto as Exhibit "C," at p. 61, lines 3 – 11.

6.   The air compressor operated by Plaintiff was manufactured by Defendant, Sullair Corporation.  <u>See</u> <u>id.</u> at p. 59, lines 19 – 23.

7.   The air compressor was supplied to Compass by Moving Defendant via a Rental Agreement dated October 25, 2006.  <u>See</u> Rental Agreement, attached hereto as Exhibit "D;" <u>see also</u> deposition transcript of Ralph McCarthy, attached hereto as Exhibit "E," at p. 30, line 12 - p. 31, line 1.

8.   Plaintiff and his co-workers were responsible for the task of cleaning out the grout lines at the end of every shift during his tenure at the Malvern site.  <u>See</u> Exhibit "C" at p. 60, line 2 – p. 61, line 9; p. 80, lines 17-20; p. 89, lines 9-14.

9.   During this process, Plaintiff was responsible for turning the compressor on, blowing water, anti-freeze and air through the hose, shutting the compressor off, closing the valve on the compressor and unhooking the hose when he was certain that no more pressure was coming out of it.  <u>See</u> <u>id.</u> at p. 78, line 23 – p. 80, line 1; p. 87, line 23 – p. 89, line 3; <u>see also</u> Exhibit "B" at p. 12, line 9 – p. 13, line 13.

10.   Plaintiff ultimately knew that it was safe to disconnect the hose when he was advised by his co-worker, working on a crane in the pit, that no more pressure was coming out of the hose.  <u>See</u> Exhibit "B" at p. 14, line 9 – p. 15, line 17; p. 31, line 2 – p. 32, line 22.

11.   On the date in question, Plaintiff's co-worker, John Joliffe, was working at the crane while the grout lines were being cleaned.  <u>See</u> deposition transcript of Wilson Eddy, attached hereto as Exhibit "F," at p. 23, lines 7 – page 11.

12. At the end of the process, Mr. Joliffe advised Andrew Krucki (Rick), one of Plaintiff's coworkers, that the line was "all clear," meaning air was coming out of hose. See id. at p. 24, lines 10-17.

13. Plaintiff then shut off the air compressor and he and Mr. Krucki began to disconnect the hoses. See id. at p. 24, lines 12-20; see also Exhibit "B" at p. 60, lines 3-22.

14. However, there was still compressed air in the hose, causing the hose connection to blow apart and swing around. See id. at p. 23, lines 2-6; see also Exhibit "B" at p. 45, lines 1-5; p. 47, lines 7-11.

15. Plaintiff was struck in the shoulder, but did not see what struck him because the entire area was filled with dust. See Exhibit "B" at p. 48, line 23 - p. 49, line 5.

16. On or about January 27, 2009, Plaintiff filed the instant action against Moving Defendant and Sullair Corporation. See generally Exhibit "A."

17. Plaintiff's Complaint contains three causes of action against Moving Defendant, including negligence, strict liability and breach of warranty. See id.

18. All of the allegations in Plaintiff's Complaint directed toward Moving Defendant relate specifically and exclusively to the air compressor Plaintiff was operating at the time of this injury. See id.

19. In February 2010, three years after the accident in question, Plaintiff served an expert report, which alleged a brand new theory of liability against Moving Defendant. See Plaintiff's Expert Report, attached hereto as Exhibit "H," at pp. 10-11.

20. The gist of this new theory is that Moving Defendant failed to warn Plaintiff of the hazards and dangers associated with pressurized hoses. See id.

21.     Plaintiff's expert report is the first time throughout the course of this litigation that Plaintiff asserted any claims against Moving Defendant with respect to a pressurized hose allegedly used on the date of the incident.

## II.     **LEGAL ARGUMENT**

### A.     Standard

22.     Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

23.     "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

24.     Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322.

25.     Once the moving party satisfies its burden, the burden then shifts to the non-moving party, who must go beyond its pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

26.     Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

### B. Plaintiff's Claims Against Moving Defendant Regarding the Pressured Hose Must be Dismissed

#### i. Plaintiff's Claims Regarding the Pressurized Hose are Barred by the Applicable Statute of Limitations

27. In Pennsylvania, products liability actions sounding in negligence or strict liability are subject to the two (2) year statute of limitations. 42 Pa. C.S.A. §5524.

28. Summary judgment is the appropriate remedy when the action is barred by the statute of limitations. Devine v. Hutt, 863 A.2d 1160, 1167 (Pa. Super. 2004).

29. In this case, Plaintiff's Complaint is devoid of any allegation, reference or mention of a pressurized hose, any allegation that Moving Defendant provided, distributed or sold a pressured hose, any allegation that Moving Defendant owed any duty to Plaintiff with respect to a pressured hose, and/or any allegation that Moving Defendant breached any standard of care with respect to a pressured hose. See generally Exhibit "A."

30. Instead, Plaintiff's Complaint alleges that Moving Defendant breached certain duties owed to Plaintiff with respect to the air compressor Plaintiff was operating at the time of his injury. See id.

31. Moreover, a hose is not a component part of the air compressor at issue. See deposition transcript of Robert Lauson, attached hereto as Exhibit "G," at p. 42, line 22 – p. 43, line 15.

32. All of Plaintiff's allegations in the Complaint relate to Moving Defendant being in the chain of distribution of the air compressor manufactured by Co-Defendant Sullair.

33. The first time that Plaintiff asserted any theory of liability against Moving Defendant with respect to a pressurized hose is in Plaintiff's expert report submitted in February, 2010, one year after Plaintiff's Complaint was filed and three years after Plaintiff's alleged injury occurred.

34. In the report, Plaintiff's expert, Mr. Hallowell, opines that Moving Defendant's liability stems *solely* from its alleged actions and/or omissions with respect to the pressured hose involved in the accident. See generally Exhibit "G."

35. Through his expert, Plaintiff abandoned his original negligence, strict liability and breach of warranty claims with respect to the air compressor, and raised a brand new theory of liability, sounding in negligence, against Moving Defendant regarding a separate product, the pressurized hose.

36. Pursuant to the applicable statute of limitations, Plaintiff was required to raise any negligence or strict liability claims regarding this injury within two (2) years from the date of the injury in question. See 42 Pa. C.S.A. §5524.

37. The first time Plaintiff ever made any claims against Moving Defendant regarding its alleged negligence with respect to the hose was in February 2010, one year after the statute of limitations expired.

38. Accordingly, these untimely claims are barred by the statute of limitations set forth in 42 Pa. C.S.A. §5524, and must be dismissed.

> ii. **Plaintiff Failed to Establish a Products Liability Cause of Action With Respect to the Pressurized Hose**
>
>> a. **Plaintiff Failed to Establish that a Pressurized Hose Supplied by Moving Defendant Caused His Injury**

39.     Under Pennsylvania law, to succeed in a products liability action, a plaintiff must establish that his injuries were caused by the product of a particular defendant. DeWeese v. Anchor Hocking, 628 A.2d 421, 423 (Pa. Super. 1993) (citing Berkebile v. Brantly Helicopter, 337 A.2d 893 (Pa. 1975)).

40.     "[S]ummary judgment is appropriate when the plaintiff has failed to establish that the defendant's products were the cause of plaintiff's injury." Id. (quoting Eckenrod v. GAF Corp., 544 A.2d 50, 52 (Pa. Super. 1988), alloc. denied, 520 Pa. 605, 553 A.2d 968 (1989)).

41.     In this case, Plaintiff alleges, in his expert report, that Moving Defendant supplied one of the hoses in use on the day of the accident. See Exhibit "H" at p. 7.

42.     However, Plaintiff was not able identify the hose that caused his injury as the hose allegedly supplied by Moving Defendant.

43.     Apart from his own speculation, Plaintiff has not introduced any evidence to establish that he was struck by the hose allegedly supplied by Moving Defendant.

44.     Plaintiff has not even offered evidence to show that the hose supplied by Moving Defendant was in even use on the day of the alleged incident.

45.     As Plaintiff cannot establish that a hose supplied by Moving Defendant caused his injury, Moving Defendant is entitled to summary judgment on Plaintiff's product liability claims.

>> b. **Plaintiff Failed to Establish that Moving Defendant Owed Plaintiff a Duty to Warn with Respect to the Pressured Hose**

46.     Generally, a plaintiff may recover against the manufacturer or seller of a product "where a product in 'a defective condition unreasonably dangerous to the user or consumer'

causes harm to the plaintiff." <u>Phillips v. A-Best Products Co.</u>, 665 A.2d 1167, 1170 (Pa. 1995) (citing section 402A, Restatement (Second) of Torts)).

47. A product can be considered "defective" if it is distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product. <u>Mackowick v. Westinghouse Electric Corp.</u>, 575 A.2d 100, 102 (Pa. 1990) (citations omitted).

48. A plaintiff raising a failure-to-warn claim must establish "that the product was sold in a defective condition 'unreasonably dangerous' to the user and that the defect caused plaintiff's injury. . . . To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product 'unreasonably dangerous.'" <u>Phillips</u>, 665 A.2d at 1171 (citations omitted).

49. "For the plaintiff in a failure-to-warn claim to establish the second element, causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller." <u>Id.</u> (citations omitted).

50. Stated another way, plaintiff must establish "that had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." <u>Demmler v. SmithKline Beecham Corp.</u>, 671 A.2d 1151, 1155 (Pa. Super. 1996).

51. If the plaintiff fails to establish either of the two elements in a failure to warn claim, the plaintiff is barred from recovery as a matter of law. <u>Phillips</u>, 665 A.2d at 1171.

52. In this case, Plaintiff was a sophisticated user of the products at issue, received extensive training regarding the use of air compressors and pressurized hoses and followed a

8

specific set of procedures while operating this equipment, which he would not have altered if additional warning were provided by Moving Defendant.

53. During his deposition, Plaintiff testified at length regarding his extensive experience with and regular training regarding both the air compressor involved in the accident and hoses used in conjunction therewith, as Plaintiff's own expert acknowledged in his report. See Exhibit "C" at p. 20, lines 14-19 and lines 19-22; p. 22, lines 12-19; p. 43, line 1 – p. 44, line 9; p. 60, line 2 – p. 61, line 9; p. 78, line 2 – p. 1, line 8; p. 100, lines 12-19; p. 102, line 9 – p. 105, line 23; see also Exhibit "B" at p. 12, line 9 – page 15, line 17; p. 31, line 2 – p. 32, line 22; p. 36, lines 7 - p. 37, line 15; and p. 58, line 17 – p. 60, line 2; Exhibit "H."

54. By Plaintiff's own admissions, he was intimately familiar with the processes and procedures associated with the operation of the air compressor at issue and hoses attached thereto, which he used/followed every day while he worked at the Malvern site.

55. Further, he received specific training regarding when and how to disconnect hoses from the air compressor and received *daily* safety training throughout his employment by Compass at the Malvern site.

56. Therefore, Plaintiff cannot possibly prove that he would have altered his behavior and the injury would have been avoided if Moving Defendant had adequately warned him of the alleged dangers associated with the use of pressurized hoses.

57. Accordingly, Plaintiff cannot establish that a necessary element of a failure to warn claim, that Moving Defendant's alleged failure to warn caused his injury, and his claims must be dismissed.

### C. Plaintiff's Claims Against Moving Defendant Regarding the Air Compressor Must be Dismissed Because Plaintiff Failed to Establish a Cause of Action Against Moving Defendant With Respect to the Air Compressor

58. In order to establish a cause of action sounding in negligence in Pennsylvania, a Plaintiff must establish the following elements:

    1. A duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

    2. A failure on the person's part to conform to the standard required: a breach of duty.

    3. A reasonably close causal connection between the conduct and the resulting injury.

    4. Actual loss or damage resulting to the interest of another.

Ney v. Axelrod, 723 A.2d 719, 721 (Pa. Super. 1999).

59. To prove a claim for strict liability or breach of warranty, the plaintiff must demonstrate that: (1) the product was defective; (2) the defect was the proximate cause of the plaintiff's injuries; and (3) the defect existed at the time that it left the supplier's control. Berkebile v. Brantly Helicopter Corporation, 337 A.2d 893, 898 (Pa. 1975).

60. Where, as here, the subject matter of Plaintiffs' complaint was technical and complex and extended beyond the ken of the average juror, expert testimony was required. See, e.g. Schlier v. Milwaukee Electrical Tool Corp., 835 F. Supp. 839, 842 (E.D. Pa. 1993) ("[E]xpert testimony is needed where the subject is beyond the purview of the ordinary lay jury's experience and knowledge"); Croydon Plastics Company Inc. v. Lower Bucks Cooling & Heating, 69 A.2d 625 (Pa. Super. 1997) (affirming trial court's ruling that exclusion of expert testimony precluded company from establishing prima facie case that defendant either sold defective product or that product was cause of incident).

61. Here, Plaintiff's expert, Mr. Hallowell, failed to assign any liability to Moving Defendant with regard to the air compressor.

62. In his report, Mr. Howell provided a finite list of all of Moving Defendant's alleged breaches, all of which related <u>directly</u> and <u>exclusively</u> to the hose allegedly present at the accident site, not an air compressor. See Exhibit "H" at pp. 10-11.

63. Plaintiff failed to support his product liability claims against Moving Defendant with respect to the air compressor with *any* expert evidence, or any other type of evidence.

64. Therefore, Plaintiff cannot establish any cause of action against Moving Defendant with respect to the air compressor.

65. As a result, this Court should grant Moving Defendant's Motion for Summary Judgment and dismiss all of Plaintiff's claims against Moving Defendant, as well as any and all cross-claims asserted against Moving Defendant by Co-Defendant Sullair Corporation.

WHEREFORE, Moving Defendant, Giles & Ransome, Inc., respectfully requests that this Honorable Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint and Co-Defendant Sullair Corporation's Cross-claims against it with prejudice.

WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP

By: _/s/ Michael B. Pullano_
Marc B. Zingarini, Esq.
Michael B. Pullano, Esq.
Meredith E. Rosenberg, Esq.
2000 Market Street, 13th Floor
Philadelphia, PA  19103
(215) 972-7900
Attorneys for Defendant,
Giles & Ransome, Inc.

Dated:  April 29, 2010