IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES ROY | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-1486 |
| SULLAIR CORPORATION, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE                                      August   25, 2010
UNITED STATES MAGISTRATE JUDGE[1]

## I.    INTRODUCTION

James Roy brought this action against Sullair Corporation ("Sullair") and Giles & Ransome, Inc. d/b/a Ransome Rental ("Ransome") seeking damages relating to injuries suffered during his use of an air compressor with hose attachments at his place of employment.  The compressor was manufactured by Sullair and supplied to his employer by Ransome with a hose attachment.[2] Defendant Ransome has moved for summary judgment as to all claims asserted against it by Plaintiff in his complaint, as well as the cross-claims asserted against it by Sullair in its answer to the complaint.  The Court heard oral argument on August 5, 2010.  For the reasons set forth below, we will deny Ransome's motion.

---

[1] The parties consented to magistrate judge jurisdiction.

[2] The hose attached to the air compressor does not appear to have been manufactured by Sullair.  Plaintiff has testified that his injury resulted from him being struck by the hose whipping about due to contained pressurized air created by the compressor.  The parties disagree about the appropriate role of the attached hose in this litigation, as well as whether the hose attached to the compressor on the date of the incident was, in fact, the hose supplied by Ransome.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (Dec. 1, 2009). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it could be said to affect the outcome of the case under governing law. *Id.* The moving party bears the initial burden of "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to successfully oppose a properly supported motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In reviewing the summary judgment record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994). The court may not make credibility determinations or weigh the evidence in making its determination. *See Anderson*, 477 U.S. at 255 (observing that these are jury functions).

III.    **FACTUAL BACKGROUND**[3]

The papers before us show that Plaintiff was employed by Compass Environmental, Inc. ("CEI"), which had been engaged to encapsulate a hazardous waste site in Malvern, Pennsylvania. This work involved pumping mortar into the ground through a 300-400 yard length of hose. With his co-workers, Roy was responsible at the end of his shift for cleaning equipment, including the long length of hose, also known as grout line, that channeled mortar to the underground site. In order to clean this hose, which is 3" in diameter and resembles a fire hose, the CEI employees used a pump to flush the hose with water and then with anti-freeze. The final step involved flushing the hose with air to remove the water and anti-freeze. For the purpose of pumping air through the grout hose, CEI leased from Ransome an air compressor manufactured by Sullair and 100 feet of 1" compressed air hose. The 1" hose attaches to the air compressor at an exterior connection. At its other end, it attaches to the 3" grout hose — the hose in need of cleaning — via a special fitting.

Near the end of his overnight shift on February 10, 2007, Plaintiff participated in the process to flush out the grout hose in conjunction with co-workers Andrew "Rick" Kruki and "Kyle." The process involved pumping clear water and then the antifreeze through the grout house. When he received word via radio from the crane operator that the antifreeze had finished coming through at the end of the 3" grout hose, which was some 300-400 yards away, Roy disconnected the 3" grout hose from the pump discharge connection and connected it to a 1" diameter compressed air hose that was connected to the Sullair air compressor. Plaintiff then started the air compressor and opened

---

[3] We recite the facts in the light most favorable to Plaintiff and as supported by some evidence in the record before us. We appreciate that, at trial, Defendants may offer evidence that will raise questions of fact for the jury to resolve pertaining to aspects of the events that we detail here and/or the credibility of the source(s) of the evidence that we are accepting as true for purposes of our summary judgment evaluation.

its air release valve to the 1" air hose, which permitted compressed air to flow towards the 3" grout hose to flush out any remaining water or antifreeze.  Plaintiff understood "Rick" to have advised "Kyle," via the radio, that air was coming out of the grout hose, which signaled that the grout hose had been cleaned of water and anti-freeze and that the compressor could be turned off.  According to Plaintiff's deposition testimony, Plaintiff then turned off the air compressor and fully closed the pressurized air release valve to stop the flow of air into the hoses.  He then listened for the sound of escaping pressurized air from the air release valve, as that valve was also used to bleed off the pressurized air in the hoses through a 1/8" diameter hole in the valve in case of any blockage at the other end of the line.  Because he did not hear any air emerging from the release valve on the air compressor, and because he understood his co-workers to have confirmed that the lines downstream were clear, Roy concluded that the hoses were depressurized and could be disconnected.  He then walked to the area at which the 1" compressed air hose was joined to the 3" grout hose.  While he held the 1" hose and "Rick" held the 3" hose, Roy flipped open one of the two cam lock handles on the hose connecting fitting.  After hearing a loud hissing noise — which alerted him to the fact that the hoses were not, in fact, depressurized — Roy closed the cam lock handle.  Immediately thereafter, however, the connecting fitting blew apart and the open ends of both the 1" air compressor hose and the 3" grout hose whipped about.  Plaintiff was struck once in the left shoulder area by what he believes was the 1" air compressor hose.   (Roy Dep. 10/29/09 at 89-116; Roy Dep. 11/12/09 at 19-48.)

Ransome had supplied the Sullair air compressor as well as 100 feet of compressed air hose to CEI at the Malvern worksite the previous month.  There were no  usage instructions attached to the hose describing how to safely and properly disconnect a pressurized hose.  In addition, the

4

compressed air hose supplied by Ransome did not have any type of warning labels, tags, or placards alerting the user that pressurized air discharging through the open end of the hose could create a "whipping" action that could cause injury. The air compressor was not equipped with a gauge, clock, or light that would alert the compressor operator that the connected hoses were pressurized. (Hallowell Report at 5, 7-8.)

Plaintiff obtained a written opinion from Richard J. Hallowell Jr., PE, CFC, whose qualifications as an expert in the field of mechanical engineering have not been challenged. Hallowell opined that debris, foreign material, or bits of grout within the hoses plugged the tiny opening in the body of the service valve on the air compressor and thus prevented the full release of compressed air from the connected hose. (*Id.* at 8.) He opined that the air compressor lacked three components necessary for a safe and reliable operation: (1) a protective filter or screen in the downstream side of the pressurized air release valve, which would have prevented the 1/8" air release opening in the body of the pressurized air release valve from being plugged by debris; (2) an easily visible air pressure gauge to display the air pressure in the connected hoses when the air release valve is initially closed, so that the user can monitor the air pressure levels and disconnect the hoses when the gauge reads zero; and (3) a warning placard or decal on the exterior of the air compressor to warn the user not to disconnect hoses until the pressurized air release valve is fully closed, there is no audible sound of air releasing from the 1/8" air release opening, and the air pressure gauge reads zero. (*Id.* at 9.) Hallowell opined that Roy's injuries were caused by the defective design of the air compressor, in that the pressurized air release valve on the compressor failed to adequately and properly vent the pressurized air in the connected hose because it was subject to "plugging" from debris when used in an industrial environment similar to the CEI worksite. (*Id.* at 10.) He also

opined that both the air compressor and the compressed air hose lacked adequate labels to warn the user not to disconnect hoses that are not totally depressurized, as this would result in a "whipping" condition that would injure the person disconnecting the hoses.  (*Id.*)  In a section of the report devoted specifically to the acts or omissions of Ransome that he believes were contrary to the standard of care, Hallowell opined that Ransome: (1) failed to properly inspect the compressed air hose for the inclusion of proper and adequate use and warning labels; (2) failed to recognize, discover, and correct a dangerous or defective condition, with reference to the fact that hoses that are pressurized can "whip" and cause bodily harm; and (3) failed to comply with governing code requirements, including accident prevention signs or tags as set forth in OSHA standards.  (*Id.* at 10-11.)

Plaintiff filed suit against Sullair and Ransome in the Court of Common Pleas of Philadelphia County on January 27, 2009.  (Doc. 15.)  His complaint asserts that he sustained serious personal injuries when "the air compressor he was using . . . malfunctioned . . . ."  (Compl. ¶ 5.)  He also refers to his employer having "rented the defective equipment from defendant, RANSOME."  (*Id.* ¶ 6.)  He asserts negligence, breach of warranty, and strict liability counts against Sullair (*id.* ¶¶ 9-35), as well as against Ransome (*id.* ¶¶ 36-64).  In the paragraphs in which he sets out the specifics of his various causes of action, he makes reference to "the aforesaid air compressor" or "the product in question." *See, e.g., id.* ¶ 10(a), (c); ¶ 37 (count against Ransome referring to "the product"); ¶ 56 (count against Ransome averring that "Defendants knew, or in the exercise of reasonable care, should and/or could have known that the aforesaid air compressor would be ultimately sold to the public and would be used by plaintiff . . .").  When Sullair and Ransome answered Plaintiff's complaint, they each also asserted a crossclaim for contribution and crossclaim for common law

indemnification against each other.  (Doc. No. 15 (Sullair Ans. dated Mar. 11, 2009; Giles &

Ransome Ans. dated Apr. 2, 2009).)[4]

## IV.   DISCUSSION

Ransome has moved for summary judgment on several grounds.  First, it contends that

Plaintiff's claims against it appear to relate to duties owed concerning the 1" compressed air hose

and that such claims are barred by the statute of limitations because they are distinct from the timely-

filed complaint that Ransome characterizes as asserting claims involving only duties owed as to the

air compressor.  Second, Ransome contends that Plaintiff presented insufficient evidence linking his

injury to contact with the hose supplied by Ransome as opposed to other hoses.  Third, Ransome

asserts that Plaintiff has not shown that he would have altered his behavior and avoided injury had

he received the warning that he contends should have been included on the air compressor and/or

compressed air hose.  Finally, Ransome contends that, to the extent that the defective product at issue

was a defective air compressor (and not a hose), Plaintiff has failed to support its claim against

Ransome with the requisite expert evidence, as the breaches Plaintiff's expert identified as relating

to Ransome in particular concerned only the hose, not the air compressor.  In response,[5] Plaintiff

---

[4] We note that Ransome indicates in the final paragraphs of its motion for summary judgment
that the Court should grant its motion for summary judgment "and dismiss all of Plaintiff's claims
against Moving Defendant, as well as any and all cross-claims asserted against Moving Defendant
by Co-Defendant Sullair Corporation."  (Ransome Mot. Summ. Jmt. ¶ 65.  *See also* Prop. Order
(seeking the dismissal with prejudice of all of Plaintiff's claims against it as well as Sullair's cross-
claims against it).)  While Ransome has nominally sought judgment as to the cross-claim asserted
against it by Sullair, Sullair has not responded to Ransome's motion.

[5] In a reply brief (Doc. 24), Ransome asserts, *inter alia*, that Plaintiff's response to its motion
for summary judgment was filed "well outside of the time-frame mandated by the federal and local
rules" and therefore should not be considered.  (Doc. 24 at 2.)  Plaintiff's response to the reply
reflects counsel's misapprehension of the motion deadline rules, but also seeks to excuse any late
filing due to the fact that counsel moved offices during this period.  Plaintiff also notes that the Court

asserts that none of the questions presented by Ransome entitle it to summary judgment and that he has sufficient evidence to go forward with his claim that he was injured due to a defective air compressor whose defects were manifested in a component part — both of which were supplied by Ransome. (Doc. 23.) We will organize our discussion of these issues in the order in which they are presented by Ransome, the moving party.

### A. Whether Plaintiff's claims regarding the pressurized hose allegedly involved in the accident are barred by the statute of limitations

Ransome's first argument is premised upon what it sees as a disconnect between the allegations of the complaint and the expert report obtained by Plaintiff. Ransome contends that Plaintiff's complaint alleged that Ransome breached certain duties owed to Plaintiff with respect to the *air compressor* that Plaintiff was operating at the time of his injury, (Ransome Br. in Supp. of Summ. Jmt. at 6-7 (citing to Compl. ¶¶ 39(a), 56)), and notes that the word "hose" does not appear anywhere in Plaintiff's complaint. Ransome contrasts this characterization of the nature of Plaintiff's action with the sections of Plaintiff's expert report that explored the liability of Ransome as an equipment rental agency, in which Hallowell focuses upon the lack of warning labels, tags, or

---

has discretion to modify the response time. We find Plaintiff's opposition to Ransome's motion for summary judgment to have been filed only three days late, counting 21 days from service by mail, plus three days for the mail to reach Plaintiff. *See* Fed. R. Civ. Proc. 56(c)(1)(B) (providing 21 days to respond to summary judgment motion); Fed. R. Civ. Proc. 6(d) (providing 3 additional days to respond to motion served by first class mail); Doc. 21-3 (certificate of service on Plaintiff's counsel at her mailing address via "postage pre-paid" on April 29, 2010). Moreover, the Federal Rules of Civil Procedure do not permit summary judgment motions to be granted simply because they are uncontested, as Ransome appears to ask the Court to do. (Doc. 24 at 2.) *See* Fed. R. Civ. Proc. 56(c)(2) (Dec. 1, 2009) (providing the circumstances under which summary judgment may be granted: if "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law"); Fed. R. Civ. Proc. 56(e)(2) (noting that summary judgment should be granted against a party that does not respond properly to the motion, "if appropriate"). Accordingly, we will consider Plaintiff's opposition to Ransome's motion.

placards on the compressed air *hose* that was supplied by Ransome.  Ransome contends that Plaintiff, through Hallowell's report prepared in early 2010, is seeking to bring a new cause of action against Ransome and that any such new claim is time-barred because it was not raised prior to the expiration of the limitations period on February 10, 2009.

Ransome's argument is premised upon the interpretation that Plaintiff has abandoned his theory that his injury was due to a defective air compressor and that he is instead asserting that his injuries were attributable solely to the air hose that was attached to the air compressor.  We cannot accept Ransome's interpretation of the nature of this case.  Plaintiff's complaint pleads design defects in the air compressor and inadequate warnings on the air compressor itself — which was supplied by Ransome — that would alert users to the dangers of handling a hose that contained pressurized air as a result of its intended use with the air compressor.  We do not agree that Plaintiff has re-characterized his claims in any way that renders them unrelated to the timely-filed complaint. The claims that we understand Plaintiff to intend to take to trial against Ransome are not barred by the statute of limitations.

### B.   Whether Plaintiff presented sufficient evidence that his injury was associated with a hose supplied by Ransome

Ransome next contends that Plaintiff has failed to meet his burden to identify the product that caused his injury or the supplier of the product that caused his injury.  (Ransome Br. in Supp. Summ. Jmt. at 10.)  Ransome points to Roy's testimony that he estimated the length of the 1" hose that he believed was what struck him as having been 30 feet long,[6] which is inconsistent with the documentary evidence that Ransome supplied a 100-foot length of hose to CEI with the air

---

[6] *But see* Roy Dep. (10/29/09) at 62 (estimating length at "Thirty feet. . . . Maybe 50.").

compressor.

We recognize that Plaintiff's description of the air compressor hose, some two-and-a-half years after he handled it, is not on all fours in terms of length when compared with the documentation of the length of hose supplied by Ransome.  However, as counsel confirmed at oral argument, there is no evidence that there was any other 1" hose at the worksite that might have been used with the Sullair air compressor.  We consider that it could reasonably be inferred, and not speculative, that the air compressor hose used at the CEI worksite on February 10, 2007 was the 1" hose that was provided by Ransome to CEI the previous month with the Sullair air compressor.

Nor are we persuaded that some deficiency in Plaintiff's evidence as to which hose actually struck him requires summary judgment in favor of Ransome.  Plaintiff testified that he believed that the object that struck him in the left shoulder area was the 1" hose that he had been holding when he had been attempting to disconnect and then re-connect the 1" air compressor hose from the 3" grout line.  In our view, this is immaterial to his claim.  He has presented evidence that he was hit when the hoses whipped about due to the pressurized air contained in them.  The pressurized air was created by the Sullair air compressor and transmitted through the 1" hose — both of which were supplied by Ransome.  We do not find the precise identity of the object that made contact with Roy's shoulder to be sufficiently material to warrant summary judgment in Ransome's favor.  We conclude that Plaintiff has offered sufficient evidence that his injury was caused by equipment supplied by Ransome to withstand summary judgment.

### C.      Whether Plaintiff presented sufficient evidence on the causation element of his failure-to-warn claim

Ransome next contends that Plaintiff's failure-to-warn claim(s) against Ransome fail.[7]  This argument is based upon testimony Roy gave at his deposition that, in Ransome's view, essentially precludes Plaintiff from "possibly prov[ing] that he would have altered his behavior" or that "the injury would have been avoided if [Ransome] had adequately warned him of the alleged dangers associated with the use of pressurized hoses."  (Ransome Br. in Supp. Summ. Jmt. at 13-14.)

With respect to this question of causation in a failure to warn product case, the Pennsylvania Superior Court has noted that, "[t]o create a jury question, the evidence introduced must be of sufficient weight to establish ... some reasonable likelihood that an adequate warning would have prevented" the plaintiff from using the dangerous item.  *Demmler v. SmithKline Beecham Corp.*, 671 A.2d 1151, 1155 (Pa. Super. Ct. 1996) (citation omitted).  Our Court of Appeals has likewise noted that, "[w]here the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident . . . ."  *Conti v. Ford Motor Co.*, 743 F.2d 185, 198 (3d Cir. 1984).

We have considered the evidence cited by Ransome.  We appreciate that Roy had some familiarity with air compressors through his employment with CEI as well as previous employment or personal use.  We also accept that Roy had participated in "maybe two, three, three [safety

---

[7] As Ransome recognizes, the lack of a warning as to the dangers inherent in a product can render the product "defective" and subject the supplier or distributor to liability.  (Ransome Br. in Supp. Summ. Jmt. at 11.)  *See also Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995) (noting that product defect claim may be based on design defect, manufacturing defect, and/or "failure-to-warn defect").  In that Ransome neither designed nor manufactured any of the equipment at issue in this litigation, we construe Plaintiff's claims against Ransome to arise from the failure to warn theory.

11

meetings] at the tops" that addressed the subject of disconnecting air lines, although his count included one given by CEI in the shift after he sustained his injury.  (*See* Roy Dep. 11/12/09 at 58-60.)  There is no question that Roy was aware of some of the dangers associated with handling pressurized hoses.  We do not find that fact, however, to answer the question of whether inadequate warnings caused the injury to Plaintiff.

Plaintiff's expert has opined that the air compressor should have included a warning that attached hoses should not be disconnected until, *inter alia*, a gauge affixed to the downstream side of the air release valve indicates that the pressure has reached zero.  (Hallowell Report at 9.)  Plaintiff has testified that he was trained that it was safe to disconnect the line if he did not hear any air coming out of the safety valve located on the compressor.  (Roy Dep. 11/12/09 at 38-39.)  The compressor did not contain a warning that the line might still be pressurized even if there was no sound of air releasing from the safety valve, and at the time of the accident, there was no other downstream safety valve nor pressure gauge on the line.  Recognizing that we are to consider the evidence offered in a light most favorable to Plaintiff, and that Plaintiff is required only to demonstrate that there was "some reasonable likelihood" that he would have heeded the warning, we believe that there is enough on this record to permit the issue to be considered at trial.  Accordingly, we will not grant summary judgment in Ransome's favor on the strict liability count of Plaintiff's complaint.

> **D.     Whether any claims by Plaintiff against Ransome regarding the air compressor are properly supported**

Finally, Ransome contends that, to the extent that Plaintiff's claims are still premised on the air compressor as plead in the complaint, "these claims must be dismissed because Plaintiff failed

to establish any liability of Moving Defendant with respect to the air compressor." (Br. in Supp. at 14.) Ransome's argument in this regard is based on the proposition that, as to the alleged breaches by Ransome, Plaintiff's expert identified breaches only with respect to "the hose allegedly present at the accident, not an air compressor." (Ransome Br. in Supp. Summ. Jmt. at 15-16 (quoting Hallowell Report at 10-11).)

We recognize that the portion of the expert report in which Hallowell details the "acts or omissions on the part of Giles and Ransome" that were "contrary to the care, skill, and judgement customarily experienced, exercise[d] or applied by like equipment rental companies" refers to the lack of warnings or instructions on the hose and that it does not, in that portion of the report, address defects in the air compressor unit. (*See, e.g.*, Hallowell Report, §§ V.C.1, V.C.3 at pp. 10-11.) The report also, however, refers to Ransome having "[f]ailed to recognize, discover and correct a dangerous or defective condition" relating to the whipping about of pressurized hoses. (Hallowell Report, § V.C.2 at p. 10.) In addition, the report details Hallowell's opinion that the air compressor was dangerous or defective because the air release valve was not up to the task of depressurizing the hoses in an industrial environment, which would lead to inherent risks of the hoses whipping about when disconnected. (*Id.*, §§ V.B.1-3 at p. 10.) We read Plaintiff's expert report as identifying ways in which the Sullair air compressor supplied by Ransome was defective and that the defect was manifested in the whipping around of hoses. While one of those hoses, the 1" air hose, was also supplied by Ransome (although evidently not manufactured by Sullair), Plaintiff does not allege a design or manufacturing defect in the hose that caused it to depressurize improperly or dangerously. Rather, the only defect identified as to the hose was the fact that it did not warn of how it could become a dangerous instrumentality in light of the alleged design defect in the air compressor

supplied by Ransome.  *See also* Pl.'s Response at 7 ("In the instant case, Plaintiff points to one (1) and only one (1) cause that led to the Plaintiff's injuries: the malfunctioning air release valve on the exterior cabinet of the air compressor.").

      Plaintiff has offered evidence that Ransome supplied the air compressor that is the subject of this litigation.  Plaintiff's expert has opined on various ways in which that air compressor was defective in its design and testing for use in an industrial environment, as well as the failure of the decals affixed to the air compressor to "alert or warn the user about the inherent risks of disconnecting hoses before confirming that all of the pressure in the hoses has been dissipated." (Hallowell Report at 10.)  While Plaintiff's expert opined as to additional steps that Ransome could have taken with respect to warnings on the hose that it supplied with the air compressor, we do not find the manner in which Hallowell attributed fault as between Sullair and Ransome to be material. A failure of the expert, who has focused upon defects and warnings, to acknowledge the legal responsibility of a supplier, when that claim has been clearly set out in the pleadings, is not fatal to Plaintiff's case against the supplier at this point.  Given that Plaintiff has presented an expert opinion regarding defects in the design of the air compressor, we find under the circumstances here that he has come forward with sufficient evidence to withstand summary judgment on his claim that Ransome supplied to CEI a defective air compressor that contained insufficient warning of the dangers it presented.

      An appropriate order follows.