IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JAMES ROY | : | |
|---|---|---|
| vs. | : | |
| | : | 2:09-cv-01486-MMB |
| SULLAIR CORPORATION, and | : | |
| GILES & RANSOME | : | |

**DEFENDANT, GILES & RANSOME INC.'S, PRE-TRIAL MEMORANDUM**

Defendant, Giles & Ransome, Inc., by and through its attorneys, Weber Gallagher Simpson Stapleton Fires & Newby, LLP, hereby submits the following Pre-Trial Memorandum.

**I.    FACTUAL BACKGROUND**

The Plaintiff's Complaint arises out of an alleged workplace injury that occurred on February 10, 2007. At that time, the Plaintiff was employed by Compass Environmental, Inc. at the Old Foot Mineral plant in Malvern, Pennsylvania. At the time of the incident in question, Plaintiff and his co-workers were using an air compressor to clean out a grout line. The air compressor used by the Compass employees was manufactured by Co-Defendant, Sullair Corporation. The air compressor was supplied to Compass by Giles & Ransome via a Rental Agreement, along with a 100 foot hose.

A grout line is essentially a three inch hose. The grout line is connected to the air compressor with a one-inch hose. Plaintiff and his co-workers were responsible for the task of cleaning out the grout lines at the end of every shift. In order to do so, the Compass employees first ran water through the three inch line, followed by anti-freeze. They then hooked up the one-inch hose from the air compressor to the three inch grout line, which they used to blow out any excess water, antifreeze or grout.

At approximately 5:30 a.m., and towards the end of the Plaintiff's shift, the Compass employees were at the final stage of this process; they were blowing air through the hose to clear out any excess grout that had accumulated inside the three inch line. The Plaintiff's co-worker, Andrew Kruki, turned off the air flow and began to unhook the hose connected to the air compressor from the three inch line. Because there was still compressed air trapped in the hose, it caused Mr. Kruki to lose control of the lines. The hose began to swing around and struck Mr. Kruki in the chest. The Plaintiff was allegedly struck in the shoulder by the uncontrolled air hose, but no one observed the hose striking him.

At his deposition, Mr. Kruki testified that he was the only person struck by the hose as a result of the explosion. Mr. Kruki testified that the Plaintiff never fell to the ground, but remained standing upright after the incident. Mr. Kruki asked the Plaintiff whether he was alright and the Plaintiff responded that he was fine and not hurt. Mr. Kruki testified that after the incident, he and the Plaintiff continued to unplug the line and finish their work.

Additionally, and most importantly, there was nothing wrong with the air compressor at issue. Mr. Kruki testified that there was no malfunction of any equipment on the date in question. As the Compass investigation disclosed, the incident was simply the result of a miscommunication between employees about whether there was still pressurized air inside the hose. The Compass employees continued to use the same air compressor on the very next shift.

The Plaintiff reported no injuries after the incident. Additionally, when the Plaintiff's back was visually examined shortly after the accident by the safety coordinator and there were no contusions or abrasions on his back. The Plaintiff did not receive any medical attention for the remainder of the week in which he was allegedly injured. He was eventually fired from Compass for poor job performance in late February 2007. It was only after the Plaintiff returned

to his home in the upper Peninsula of Michigan that he began to seek medical attention and claim to he was hurt in the February 10, 2007 accident three weeks prior.

## II. LIABILITY

### A. The Plaintiff's Claims Against Giles & Ransome With Respect to the Pressured Hose Are Barred By The Statute Of Limitations

The Plaintiff failed to raise any claims against Giles & Ransome with respect to the pressured hose allegedly involved in his accident in his Complaint or throughout the course of discovery in this case. The first time the Plaintiff asserted any theory of liability against Giles & Ransome regarding a pressured hose was in his expert report in February 2010, three years after the incident in question. These belated claims, sounding in negligence, are barred by the statute of limitations and must be dismissed.

In Pennsylvania, products liability actions sounding in negligence or strict liability are subject to the two (2) year statute of limitations. 42 Pa. C.S.A. §5524. "The statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations, even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy." Pocono International Raceway, Inc., v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983).

In this case, the Plaintiff's Complaint is devoid of any allegation, reference or mention of a pressurized hose, any allegation that Giles & Ransome provided, distributed or sold a pressured hose, any allegation that Giles & Ransome owed any duty to the Plaintiff with respect to a pressured hose, and/or any allegation that Giles & Ransome breached any standard of care with respect to a pressured hose. Instead, the Plaintiff's Complaint alleges that Giles & Ransome

breached certain duties owed to the Plaintiff with respect to the <u>air compressor</u> Plaintiff was operating at the time of his injury.

In his Complaint, the Plaintiff asserted three causes of action against Giles & Ransome, including negligence, strict liability and breach of warranty, all with respect to the <u>air compressor</u>. There are no allegations whatsoever regarding a pressurized hose in the Plaintiff's Complaint. Indeed, the word "hose" does not even appear in the Plaintiff's Complaint. Moreover, a hose is not a component part of the air compressor at issue.

The first time that the Plaintiff asserted any theory of liability against Giles & Ransome with respect to a pressurized hose is in the Plaintiff's expert report submitted in February, 2010, one year after the Plaintiff's Complaint was filed and three years after the Plaintiff's alleged injury occurred. In the report, the Plaintiff's expert, Mr. Hallowell, opines that Giles & Ransome's liability stems *solely* from its alleged actions and/or omissions with respect to the pressured hose involved in the accident. Through his expert, the Plaintiff abandoned his original negligence, strict liability and breach of warranty claims with respect to the air compressor, and raised a brand new theory of liability, sounding in negligence, against Giles & Ransome regarding a separate product, the pressurized hose.

The Plaintiff's right to institute a personal injury suit first arose three years before he submitted the above-referenced expert report, at the time he sustained his alleged injury. Pursuant to the applicable statute of limitations, the Plaintiff was required to raise any negligence or strict liability claims regarding this injury within two (2) years from the date of the injury in question. See 42 Pa. C.S.A. §5524. The first time the Plaintiff ever made any claims against Giles & Ransome regarding its alleged negligence with respect to the hose was in February 2010,

4

one year after the statute of limitations expired. Accordingly, these untimely claims are barred by the statute of limitations set forth in 42 Pa. C.S.A. §5524.

  B. **The Plaintiff's Claims Against Giles & Ransom With Respect To The Pressured Hose Lack Merit**

Even if the Court were to allow the Plaintiff's claims with respect to the pressurized hose to proceed, the Plaintiff's theory of liability regarding the pressurized hose must ultimately fail for several reasons.

First, the Plaintiff failed to establish that a hose supplied by Giles & Ransome caused his alleged injuries. It is well established to succeed in a products liability action under Pennsylvania law, a plaintiff must establish that his injuries were caused by the product of a particular defendant. DeWeese v. Anchor Hocking, 628 A.2d 421, 423 (Pa. Super. 1993) (citing Berkebile v. Brantly Helicopter, 337 A.2d 893 (Pa. 1975)). "[S]ummary judgment is appropriate when the plaintiff has failed to establish that the defendant's products were the cause of plaintiff's injury." Id. (quoting Eckenrod v. GAF Corp., 544 A.2d 50, 52 (Pa. Super. 1988), alloc. denied, 520 Pa. 605, 553 A.2d 968 (1989)).

Here, the Plaintiff has never been able to properly identify the product that caused his injury or the supplier of the product that caused his injury. The record is clear that there were two hoses used in connection with the air compressor on the date in question. At his deposition, the Plaintiff testified that the hose that caused his injury was thirty feet long. However, the record is clear that the hose supplied by Giles & Ransome was 100 feet long. Apart from his own speculation, the Plaintiff has not introduced any evidence to establish that he was struck by the hose allegedly supplied by Giles & Ransome.

Second, the Plaintiff cannot prove, as a matter of law, that Giles & Ransome's alleged failure to warn him that the hose in question was dangerous caused his injuries. To prevail on a

failure to warn claim, the plaintiff must prove "that the product was sold in a defective condition 'unreasonably dangerous' to the user and that the defect caused plaintiff's injury." Phillips v. A-Best Products Co., 665 A.2d 1167, 1171 (Pa. 1995). To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product 'unreasonably dangerous.'" Id. To establish the second element, causation, "the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller." Id.

Here, the Plaintiff was a sophisticated user of the products at issue, received extensive training regarding the use of air compressors and pressurized hoses and followed a specific set of procedures while operating this equipment, which he would not have altered if additional warning were provided by Giles & Ransome. During his deposition, the Plaintiff bragged at length regarding his extensive experience with and regular training regarding both the air compressor involved in the accident and hoses used in conjunction therewith, as the Plaintiff's own expert acknowledged in his report. Additionally, the Plaintiff himself testified that he was well aware of just how dangerous an air compressor can be prior to using the compressor on the date in question. In light of this admission the Plaintiff's theory of the need for additional warnings rings hollow.

More importantly, it was in fact Mr. Kruki who took apart the hoses and not the Plaintiff. Because the Plaintiff was not the person who took apart the hoses the Plaintiff's theory of negligent warnings must fail as the Plaintiff would not have been the person to read the warnings in the first place.

Third, although the Plaintiff, through his expert, has alleged that Giles & Ransome failed to comply with OSHA section 1910.145, this allegation fails on the grounds that OSHA governs

6

the behavior of employers and workplace safety. It does not apply to product suppliers. Therefore, Giles & Ransome, the supplier of the product in question, cannot possibly be exposed to liability based on any alleged violation of OSHA standards.

Fourth, the incident in which the Plaintiff was allegedly injured was not reported for two weeks after its occurrence. Therefore, no contemporaneous investigation was performed into the cause of the Plaintiff's injuries. While some photographs were taken of the compressor following the accident, it is impossible to identify from those photographs whether the hose attached to it is the same hose supplied by Giles & Ransome.

### C. The Plaintiff Cannot Establish A Claim Against Giles & Ransom With Respect To The Air Compressor

As a preliminary matter, it must be noted that the majority of Plaintiff's claims in this lawsuit are product liability claims related to a piece of equipment manufactured by Co-Defendant, Sullair Corporation. Indeed, Plaintiff's expert report makes clear that the bulk of Plaintiff's allegations relate to defects in the air compressor that the Compass employees were using at the time of the incident in question. Giles & Ransome merely supplied the Sullair air compressor to Compass through a Rental Agreement and, accordingly, cannot be held responsible for any alleged injuries resulting from its alleged malfunction.

Further, as discussed at length above, the Plaintiff originally alleged causes of action against Giles & Ransome for negligence, strict liability and breach of warranty with respect to the air compressor the Plaintiff was operating at the time of his injury. In February 2010, one year after the lawsuit was filed the Plaintiff shifted the basis for his claims against Giles & Ransome from the air compressor to a pressurized hose allegedly attached thereto. In doing so, the Plaintiff abandoned his claims against Giles & Ransome with respect to the air compressor itself.

Even if the Plaintiff hadn't abandoned his claims against Giles & Ransome regarding the air compressor, these claims must be dismissed because the Plaintiff failed to establish any liability of Giles & Ransome with respect to the air compressor. In order to establish a cause of action sounding in negligence in Pennsylvania, a plaintiff must establish the following elements:

1.  A duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2.  A failure on the person's part to conform to the standard required: a breach of duty.

3.  A reasonably close causal connection between the conduct and the resulting injury.

4.  Actual loss or damage resulting to the interest of another.

Ney v. Axelrod, 723 A.2d 719, 721 (Pa. Super. 1999). Furthermore, "'the mere happening of an accident does not entitle the injured person to a verdict; [a] plaintiff must show that defendant owed him a duty and that duty was breached.'" Id. (citing Engel v. Parkway Co., 266 A.2d 685, 687 (Pa. 1970)). To prove a claim for strict liability or breach of warranty, the plaintiff must demonstrate that: (1) the product was defective; (2) the defect was the proximate cause of the plaintiff's injuries; and (3) the defect existed at the time that it left the supplier's control. Berkebile v. Brantly Helicopter Corporation, 337 A.2d 893, 898 (Pa. 1975).

Where, as here, the subject matter of the Plaintiffs' complaint was technical and complex and extended beyond the ken of the average juror, expert testimony was required. See, e.g. Schlier v. Milwaukee Electrical Tool Corp., 835 F. Supp. 839, 842 (E.D. Pa. 1993) ("[E]xpert testimony is needed where the subject is beyond the purview of the ordinary lay jury's experience and knowledge"); Croydon Plastics Company Inc. v. Lower Bucks Cooling & Heating, 69 A.2d 625 (Pa. Super. 1997) (affirming trial court's ruling that exclusion of expert

testimony precluded company from establishing prima facie case that defendant either sold defective product or that product was cause of incident).

Here, Plaintiff's expert, Mr. Hallowell, failed to assign any liability to Giles & Ransome with regard to the air compressor. In his report, Mr. Howell provided a finite list of all of Giles & Ransome's alleged breaches, all of which relates <u>directly</u> and <u>exclusively</u> to the hose allegedly present at the accident site, not an air compressor.

Plaintiff failed to support his negligence claims against Giles & Ransome with respect to the air compressor with *any* expert evidence, or any other type of evidence to establish that there was a duty owed or a breach thereof. Plaintiff also failed to support his strict liability claims against Giles & Ransome with respect to the air compressor with *any* expert evidence, or any other type of evidence, to establish the product was defective when it left Giles & Ransome's hands. On the other hand, Giles & Ransome produced the expert report Dr. Paul Dreyer, P.E., which concludes that Giles & Ransome rented the compressor in a safe and suitable condition. <u>See</u> C.V. and Report of Dr. Dreyer, true and correct copies of which are attached hereto as Exhibits "A" and "B." Therefore, Plaintiff cannot establish any cause of action against Giles & Ransome with respect to the air compressor.

### III.   <u>DAMAGES</u>

####    A.   **Injuries**

The Plaintiff alleges that he sustained multiple back and shoulder injuries as a result of the incident. On March 3, 2007, three weeks after the alleged incident, the Plaintiff was examined by Dr. Mark Edwards at the War Memorial Hospital in Sault Ste. Marie, Michigan. X-rays were taken of the Plaintiff's shoulder and revealed no fracture or dislocation.

It should be noted that the Plaintiff was diagnosed with a possible tear of his left rotator cuff on November 30, 2004. The Plaintiff was prescribed pain killers and continued to have problems with left shoulder pain up through July 2006. In July 2006, several months before this incident, the Plaintiff presented at the Kinross Clinic and was prescribed Naprosyn and Vicodin because of complaints of pain to his shoulder due to over use on other job sites. The Plaintiff had his prescription for Vicodin refilled in September 2006 and was still taking Naprosyn as of December 2006, only two months before this incident. Indeed, the record is clear that the Plaintiff even admitted to his co-workers that he injured his shoulder prior to the incident in question. Thus, if in fact, the Plaintiff actually has pain in his shoulder, it is clearly result of the Plaintiff's pre-existing condition for which he treated up until the time of the accident.

On January 26, 2010 the Plaintiff was examined by Scott Rushton. At the completion of the examination Dr. Rushton diagnosed the Plaintiff with cervical sprain and strain. Any suggestion by the Plaintiff that his complaints of radiating pain are causally related to the incident with Compass is unfounded. Dr. Rushton does not believe that the Plaintiff needs any additional treatment and certainly does not need any surgical intervention as a result of the incident with Compass. See C.V. and Report of Dr. Rushton, true and correct copies of which are attached hereto as Exhibits "C" and "D."

    **B.    Wage Loss**

The Plaintiff's vocational report claims that the Plaintiff's future lost earnings can be calculated by taking the salary made in the year prior to the accident ($40,000) and multiplying by the next thirty (30) years that the Plaintiff claims that he will never be able to work. However, a cursory glance of the Plaintiff's spotty work history and W-2s reflect that the

Plaintiff's employment history was irregular at best and his salary only averaged somewhere in the range of $15,000-$18,000 a year prior to 2007.

Further, Rosalyn Pierce interviewed and conducted a vocational examination of the Plaintiff and concluded that the Plaintiff *is* capable of working and obtaining employment in a salary range that meets or exceeds what the Plaintiff was making prior to his accident. See C.V. and Report of Rosalyn Pierce, true and correct copies of which are attached hereto as Exhibits "E" and "F."

## IV. **WITNESSES**

Giles & Ransome hereby reserves the right to call any or all of the following witnesses at the time of trial:

### A. Fact Witnesses

1. The Plaintiff
2. Andrew Kruki (by video tape)
3. Robert Lauson
4. Ralph McCarthy
5. Joshua Kelly
6. Wilson Eddy
7. Mark Johnson (by video tape)
8. John A. Jolliffe
9. Any and all additional witnesses identified through discovery
10. Each and every custodian of records necessary to authenticate all documentary and other physical evidence
11. Any and all witness listed by the Plaintiff in his Pre-trial Memorandum
12. Any and all witnesses listed by Co-Defendant in its Pre-trial Memorandum

B. **Expert Witnesses**

1. Scott A. Rushton, M.D. (by video tape)

2. Rosalyn Pierce

3. Paul L. Dreyer, P.E.

Giles & Ransome reserves the right to supplement, revise and amend the foregoing list in order to call additional witnesses to both support its own case and rebut the Plaintiff's case. Giles & Ransome will identify such additional witnesses and advise the Plaintiff and the Court that it intends to call such witnesses in advance of proffering the same at trial.

V. **EXHIBITS**

1. All Pleadings filed on behalf of any party

2. All Motions / Petitions and exhibits thereto

3. All discovery requests and responses thereto

4. All Interrogatories and Answers to Interrogatories

5. All Requests for Production and Responses thereto

6. Any documents exchanged between the parties during the litigation, including any and documents produced by Sullair Corporation, Plaintiff and/or Giles & Ransome

7. All of the Plaintiff's Medical records, including but not limited to records from:

    a. War Memorial Hospital (all departments, including Radiology, billing, ER, etc.)

    b. Dr. Timothy Hayes

    c. Northeast Urgent Care Clinic

    d. International Orthopedic & Sports Medical Center (Richard W. Ganzhorn, M.D.)

    e. Coventry Health Care

    f. Marquette Rehabilitation (Richard E. Vermeulen, M.D.)

  g.  Marquette General Neurosurgery

  h.  Richard Kaplan, M.D.

  i.  Norman B. Stempler, D.O.

  j.  Kevin Jon Lawson, M.D.

  k.  Riverside Medical Associates (Dr. John Ockenfels)

  l.  Kinross Community Care Clinic

  m.  Great Lakes Neurology (Steve Huder, M.D.)

  n.  Northern Neurosurgery (Craig T. Coccia, M.D.)

  o.  Northern Urgent Care

  p.  Michigan Spine & Pain

  q.  Worker's Compensation

  r.  Social Security Administration

  s.  AIG Domestic Claims

8. The Plaintiff's X-rays, CT, MRI and other studies

9. The Plaintiff's employment records

10. The Plaintiff's tax returns

11. Deposition Transcript of James Roy dated October 29, 2009 and all exhibits attached thereto

12. Deposition Transcript of James Roy dated November 12, 2009 and all exhibits attached thereto

13. Deposition Transcript of Ralph McCarthy dated December 17, 2009 and all exhibits attached thereto

14. Deposition Transcript of Robert Lauson dated November 12, 2009 and all exhibits attached thereto

15. Deposition Transcript of Wilson Wayne Eddy dated January 14, 2010 and all exhibits attached thereto

16. Deposition Transcript of Joshua Michael Kelly dated January 13, 2010 and all exhibits attached thereto

17. Video and Trial Transcript of Joshua Mark Johnson dated April 12, 2010 and all exhibits attached thereto

18. Video and Trial Transcript of Andrew Kruki dated May 27, 2010 and all exhibits attached thereto

19. Deposition Transcript of John A. Jolliffe dated March 25, 2010 and all exhibits attached thereto

20. Curriculum Vitae for:

    a. Scott A. Rushton, M.D.

    b. Rosalyn Pierce

    c. Paul L. Dreyer, P.E.

21. The Expert Reports of:

    a. Scott A. Rushton, M.D.

    b. Rosalyn Pierce

    c. Paul L. Dreyer, P.E.

22. All photographs produced in discovery

23. The Plaintiff's Health/Medical insurance information

24. The Plaintiff's Pretrial Memorandum and any exhibits thereto

25. Co-Defendant's Pretrial Memoranda and any exhibits thereto

26. Any and all exhibits attached to previously filed motions

27. Anatomic charts and graphs

28. Documents related to medical record Subpoenas and record production

29. Medical articles and literature on the relevant medical issues

30. With the approval of the Court, defendant reserves the right to:

    a) Enlarge any of the above exhibits or any portion of the above exhibits and

    b) Use medical literature during the course of the trial

Giles & Ransome reserves the right to supplement, revise and amend the foregoing list in order to call additional witnesses to both support its own case and rebut the Plaintiff's case. Giles & Ransome will identify such additional exhibits and advise the Plaintiff and the Court that it intends to introduce such witnesses in advance of proffering the same at trial.

V.  **ANTICIPATED LENGTH OF TRIAL**

3 to 4 days.

VI. **SETTLEMENT**

At a mediation held on June 22, 2010, Giles & Ransome offered the Plaintiff $2,500 to resolve all claims against it. This offer was rejected. Giles & Ransome has not made any additional offer since that time.

Respectfully submitted,

**WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP**

Date:  September 1, 2010         BY:    /s/ Michael B. Pullano
Marc B. Zingarini, Esquire
Michael B. Pullano, Esquire
2000 Market Street, 13th Floor
Philadelphia, Pa 19103
(215) 972-7900
(215) 564-7699 – fax
mzingarini@wglaw.com
mpullano@wglaw.com
Attorneys for Defendant Giles & Ransome Inc.