| | |
|---|---|
| James Roy, | : UNITED STATES DISTRICT COURT |
|     Plaintiff | : EASTERN DISTRICT OF PENNSYLVANIA |
|       v. | : |
| Sullair Corporation and | : |
| Giles & Ransome, Inc. d/b/a | : 2:09-1486 |
| Ransome Rental, | : |
|     Defendants. | : |

## ORDER

It is hereby **ORDERED** and **DECREED** that Defendant Sullair Corporation's Motion *in Limine* to Preclude Testimony Relative to Plaintiff's Status as "Disabled" as Determined by the Social Security Administration is hereby **GRANTED** as said testimony usurps the role of the jury, only serves both to confuse and mislead the jury and the admission of same would be highly prejudicial and should be stricken as a matter of law.

BY THE COURT:

**David R. Strawbridge**
**U.S. MAGISTRATE JUDGE**

9051-08
MAYFIELD, TURNER, O'MARA,
DONNELLY & McBRIDE, P.C.
By: W. Thomas McBride
Identification No. 39293
By: Bennett E. Langman
Identification No. 205185
1617 J.F.K. Blvd., Suite 932
Philadelphia, PA 19103
(215) 564-0500
*Attorneys for Defendant,*
*Sullair Corporation*

| | |
|---|---|
| James Roy, | : UNITED STATES DISTRICT COURT |
|     Plaintiff | : EASTERN DISTRICT OF PENNSYLVANIA |
|     v. | : |
| Sullair Corporation and | : |
| Giles & Ransome, Inc. d/b/a | : 2:09-1486 |
| Ransome Rental, | : |
|     Defendants. | : |

## DEFENDANT SULLAIR CORPORATION'S MOTION *IN LIMINE* TO PRECLUDE TESTIMONY RELATIVE TO PLAINTIFF'S STATUS AS "DISABLED" AS DETERMINED BY THE SOCIAL SECURITY ADMINISTRATION

Defendant, Sullair Corporation (hereinafter "Sullair"), submits this Motion *in Limine* to preclude testimony at trial concerning Plaintiff, James Roy's (hereinafter "Plaintiff") status as disabled as determined by the Social Security Administration as such testimony usurps the role of the jury, only serves both to confuse and mislead the jury and the admission of same would be highly prejudicial and should, therefore, be stricken as a matter of law.  In support of its motion, Sullair avers as follows:

1.     James Roy alleges in his Complaint that he was injured from an incident which occurred on February 10, 2007 while working as a laborer at a clean up site for a battery manufacturing facility in Malvern, Pennsylvania.  (A true and correct copy of the plaintiff's Complaint is attached hereto as Exhibit **A**.)

2.      Plaintiff claims that, while attempting to clear out grout from the lines that distribute concrete into the ground, he sustained permanent, personal injury when the line was disconnected without being fully relieved of pressure therein causing it to blow apart and strike Plaintiff's co-worker and then Plaintiff. (See Exhibit **A**.)

3.      Defendant Sullair manufactured the compressor to which the aforementioned line was attached on the date of the incident.

4.      In this matter, both sides presented experts. Dr. Rushton opined that the plaintiff can work, and plaintiff's expert opined that he cannot.

5.      There is also a key disagreement between the parties over whether or not plaintiff was genuinely injured in this incident given the lack of any objective medical evidence.

6.      The defense nevertheless anticipates that plaintiff will seek to elicit testimony at trial from both Plaintiff himself and Plaintiff's medical experts regarding Plaintiff's status as "disabled" as determined by the Social Security Administration.

7.      The defense submits that such testimony is inadmissible and highly prejudicial to defendants as plaintiff is seeking to usurp the role of the jury and/or both confuse and mislead the jury regarding their determination of damages.

**A.     THE ADMISSION OF THE AFOREMENTIONED TESTIMONY USURP'S THE JURY'S ROLE IN DETERMING THE EXTENT OF PLAINTIFF'S DAMAGES.**

8.      The Eastern District of Pennsylvania has previously addressed this issue and analyzed same as if the testimony were expert testimony. *See Morse v. Jimenez*, 2004 WL1211958 (E.D.Pa. 2004), attached hereto as Exhibit **B**.

9.      In *Morse*, United States Magistrate Judge Hart found this same type of evidence was analogous to expert testimony because, "although no expert would take the stand, expert testimony would be given through an administrative decision, granting [plaintiff] disability benefits." *Id.*

10.     Further, Judge Hart determined that the admittance of such evidence would usurp the jury's role in determining the extent of the plaintiff's injuries, because a government agency has made the determination of permanent disability. *Id.*

11.     In making this determination, Judge Hart notes that the Social Security Administration's decision of disability was based on an entirely different standard of review and included evidence of impairments not relevant to the case at issue. *Id.*

12.     In this regard, Judge Hart precluded any reference to the plaintiff's Social Security application, proceedings or receipt of benefits as an usurpation of the jury's role. *Id., citing Whitmill v. City of Philadelphia*, 29 F.Supp.2d 241, 247 (E.D.Pa. 1998).

13.     "[The use of expert testimony] must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Whitmill* at 247, *quoting United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd Cir. 1991).

14.     As in *Morse*, the evidence at issue in the current litigation, namely Plaintiff's being determined "disabled" by the Social Security Administration, usurps the role of the jury in applying the applicable law to the facts before it.

15.     In determining whether an individual is disabled for purposes of the receipt of disability benefits, the concern is simply whether an individual is precluded from obtaining gainful employment based upon certain impairments; in other words, the concern is not how, why or what caused any of the related impairments, nor is it limited to specific injuries.

16.     Further, in the case at bar, in making the determination that Plaintiff was "disabled" and eligible for disability benefits, the Administrative Law Judge considered the lack of availability of sedentary jobs in Plaintiff's locale based upon a Social Security Administration doctor's opinion that Plaintiff was **not** totally disabled from all work and could perform same.

17.     At issue in this case is the extent of Plaintiff's injuries as a result of the subject incident. If a jury is told that the Plaintiff is "totally disabled" as determined by the Social Security Administration, there is no decision for the jury to make.

18.     Furthermore, in this matter, both sides have presented expert opinions regarding the ability of plaintiff to work.

19.     More fundamentally, the defendant's expert cites a compelling absence of objective medical evidence to support plaintiff's contention that the workplace incident in question caused a permanent injury of some kind.

20.     It is the jury's role to assess the credibility of this testimony without being misled into thinking that this analysis has already been performed by the Social Security Administration.

**B.      THE ADMISSION OF THE AFOREMENTIONED TESTIMONY WOULD ONLY SERVE TO CONFUSE AND MISLEAD THE JURY.**

21.     Courts have found that, while evidence regarding the granting or denial of Social Security disability benefits may be of some nominal value, the introduction of such evidence will create a considerable amount of confusion regarding the issues with respect to the applicable standards and substantive content of such standards to be applied in resolving the factual and legal issues as to the existence of plaintiff's alleged disability. Notably, this is an issue of first impression within the Eastern District of Pennsylvania with the exception of the case decided by United States Magistrate Judge Hart cited above. *See Allen v. Exxon Shipping Co.*, 639 F.Supp. 1545, 1547 (D.Me. 1986) (granting plaintiff's motion *in limine* to exclude evidence regarding plaintiff's denial of Social Security disability benefits in a workers compensation action as overly prejudicial and likely to create significant confusion regarding the issues and applicable standards); *Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 171 (Tenn. 1978) (excluding evidence of plaintiff's status of disabled according to the Social Security Administration for purposes of showing the existence or extent of an employee's permanent disability in a workers compensation suit); *Holmes v. University of Pennsylvania Health Systems*, 2007 WL 2687657

(Pa.Com.Pl. 2007), attached hereto as Exhibit **C,** (finding that the issues at the Administrative hearing regarding plaintiff's disability benefits  and the issues in a negligence action are very different and require different burdens of proof).

22.     Further, courts have found that the introduction of such evidence would create a high level of risk of misleading the jury and/or creating unfair prejudice. *Allen* at 1547.

23.     The *Holmes* Court noted that the jury in a negligence action was asked to determine whether defendants were negligent and, if so, whether the negligence was a factual cause of plaintiff's alleged injury, but these issues were **not** before the Administrative Law Judge.

24.     "No one doubts that an Administrative Law Judge found plaintiff disabled from engaging in substantial gainful activity.  However, that finding is **not** relevant to the issue of whether defendants were negligent... that is, whether defendant breached the standard of care and whether that breach was a factual cause of plaintiff's injuries. *Holmes*, emphasis added.  The Administration Law Judge is not concerned **why** a plaintiff is disabled, simply that he **is** disabled.

25.     Plaintiff in this case is seeking to admit evidence that the Social Security Administration has found him to be completely disabled, but as noted above, it is important to note that the Administrative Law Judge was not faced with questions regarding the cause of plaintiff's injuries.

26.     By allowing plaintiff to introduce such evidence, there is a high probability that the jury would be confused and/or misled into believing that there is no reason for them to consider the extent of plaintiff's injuries as a government entity as already decided that he is completely disabled.

27.     Further, a jury might not make the distinction that, even if they believe that plaintiff is completely disabled, that the Administrative Law Judge is taking into account the plaintiff's complete medical history and is not limited his decision to injuries that may have occurred as a result of this one specific incident.

28.     For example, diagnostic studies of the plaintiff in this case indicate that he suffers exclusively from cervical degenerative disease.  The imaging studies as reported by the plaintiff's radiologists do not point to a traumatically induced change to the anatomy of his cervical spine.

29.     While such a disease could be[1] aggravated by a traumatic incident, such a disease is not caused by one; therefore, plaintiff's degeneration in his cervical spine may have caused an Administrative Law Judge to find him completely disabled, without regard for how such a disability was caused, but a jury could be confused or misled into thinking that such a decision indicates that the subject incident caused the plaintiff to be determined completely disabled.

30.     Even more egregious regarding the specific facts at issue in this case, the Administrative Law Judge made the determination of disabled as to the plaintiff notwithstanding the fact that the Social Security doctor indicated that plaintiff could engage in sedentary work.

31.     The Administrative Law Judge came to this conclusion by considering the available jobs in the plaintiff's locale.

32.     The jury will be led to believe that the plaintiff is completely disabled from ever working in any setting as a result of the Social Security Administration's decision even though it was found that the plaintiff could perform sedentary work.  This is clearly misleading to the jury who is charged with determining the extent of plaintiff's "injuries" without regard to the availability of sedentary jobs.

33.     By permitting the plaintiff to introduce evidence that the Social Security Administration has determined him to be completely disabled from future employment, the jury will be significantly confused or mislead into believing that the extent of plaintiff's injuries has already been determined.

---

[1] Which is also a point in dispute for initially plaintiff told several co-workers he was not hurt; several co-workers also observed that he did not appear to be hurt.

**C.    THE ADMISSION OF THE AFOREMENTIONED EVIDENCE WOULD CAUSE UNDUE DELAY AS SULLAIR WOULD BE FORCED TO DEFEND AGAINST SUCH EVIDENCE BY ARGUING BOTH THE VALIDITY OF THE DECISION AS WELL AS EXPLAIN THE DIFFERENCES IN STANDARDS.**

34.    The *Allen* Court cited above also determined that such evidence should be properly excluded as the introduction of same would likely lead to undue delay and would waste the time of the Court, the parties and the jury. *Allen* at 1547.

35.    The Court found that the introduction of evidence related to the plaintiff's application for and denial of disability benefits would force the plaintiff to counter the evidence and explain the decision's significance or lack thereof.    *Id.*

36.    The admission of such evidence would create **a trial within the trial** regarding the validity of the Social Security Administration's decision to grant the plaintiff in this case permanent disability benefits.

37.    Further, Sullair would be required to educate the jury unnecessarily regarding the standards with which disability is determined by the Social Security Administration and how those standards differ from those at issue in the current litigation.

38.    Such a waste of time is wholly unnecessary as both plaintiff and Sullair will be presenting evidence by way of expert testimony during the trial regarding the extent of plaintiff's injuries as a result of this incident; there is, therefore, no need to muddy up the waters with nominally relevant evidence that would only serve to elongate the trial.

39.    The admission of evidence that plaintiff was declared disabled by the Social Security Administration in support of plaintiff's position regarding the extent of his damages would, therefore, only serve to cause undue delay and waste the time of all persons involved in the litigation of same.

**D.    THE AFOREMENTIONED EVIDENCE SHOULD NOT BE ADMITTED AS DEFENDANT WAS NOT A PARTY TO THE SOCIAL SECURITY PROCEEDING AND HAD NO OPPORTUNITY TO REBUT PLAINTIFF'S PROOFS.**

40.    The introduction of such evidence is further prejudicial and should be excluded based upon defendant's inability to participate in the Social Security Administration's hearing regarding plaintiff's disability. *Bingham* at 171.

41.    Since Sullair was not a party to plaintiff's disability proceeding, it was not permitted to provide evidence to rebut plaintiff's claim that he was permanently disabled nor was it permitted to cross-examine any witnesses that provided testimony in support of same.

42.    Sullair would certainly have challenged the plaintiff's medical claims had it been granted an opportunity to participate.

43.    It would be patently unfair for plaintiff to be able to introduce such a decision as evidence against Sullair when Sullair was never afforded the opportunity to participate in that hearing or provide any argument against such a decision.

**WHEREFORE**, Defendant, Sullair Corporation, respectfully requests that the Court enter the attached Order, barring testimony at trial concerning Plaintiff, James Roy's status as disabled as determined by the Social Security Administration as such testimony usurps the role of the jury, only serves to both confuse and mislead the jury and the admission of same would be highly prejudicial. Any reference to same in plaintiff's experts' reports must be stricken.

Respectfully Submitted,
**MAYFIELD, TURNER, O'MARA, DONNELLY & McBRIDE, P.C.**

Date: 10/14/10                    BY: _____
                                       W. Thomas McBride
                                       Bennett F. Langman

9051-08
**MAYFIELD, TURNER, O'MARA,**
**DONNELLY & McBRIDE, P.C.**
By: W. Thomas McBride
Identification No. 39293
By: Bennett E. Langman
Identification No. 205185
1617 J.F.K. Blvd., Suite 932
Philadelphia, PA 19103
(215) 564-0500
*Attorneys for Defendant,*
*Sullair Corporation*

| | |
|---|---|
| James Roy, | : UNITED STATES DISTRICT COURT |
| Plaintiff | : EASTERN DISTRICT OF PENNSYLVANIA |
| v. | : |
| Sullair Corporation and | : |
| Giles & Ransome, Inc. d/b/a | : 2:09-1486 |
| Ransome Rental, | : |
| Defendants. | : |
| | : |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SULLAIR CORPORATION'S MOTION *IN LIMINE* TO PRECLUDE TESTIMONY RELATIVE TO PLAINTIFF'S STATUS AS "DISABLED" AS DETERMINED BY THE SOCIAL SECURITY ADMINISTRATION

Defendant, Sullair Corporation (hereinafter "Sullair"), submits this Motion *in Limine* to preclude testimony at trial concerning Plaintiff, James Roy's (hereinafter "Plaintiff") status as disabled as determined by the Social Security Administration as such testimony usurps the role of the jury, only serves both to confuse and mislead the jury and the admission of same would be highly prejudicial and should, therefore, be stricken as a matter of law.

## I.    INTRODUCTION

James Roy alleges in his Complaint that he was injured from an incident which occurred on February 10, 2007 while working as a laborer at a clean up site for a battery manufacturing facility in Malvern, Pennsylvania.  (A true and correct copy of the plaintiff's Complaint is attached hereto as

Exhibit **A**.)  Plaintiff claims that, while attempting to clear out grout from the lines that distribute concrete into the ground, he sustained permanent, personal injury when the line was disconnected without being fully relieved of pressure therein causing it to blow apart and strike Plaintiff's co-worker and then Plaintiff.  (See Exhibit **A**.)  Defendant Sullair manufactured the compressor to which the aforementioned line was attached on the date of the incident.

In this matter, both sides presented experts.  Dr. Rushton opined that the plaintiff can work, and plaintiff's expert opined that he cannot.  There is also a key disagreement between the parties over whether or not plaintiff was genuinely injured in this incident given the lack of any objective medical evidence.  The defense nevertheless anticipates that plaintiff will seek to elicit testimony at trial from both Plaintiff himself and Plaintiff's medical experts regarding Plaintiff's status as "disabled" as determined by the Social Security Administration.  The defense submits that such testimony is inadmissible and highly prejudicial to defendants as plaintiff is seeking to usurp the role of the jury and/or both confuse and mislead the jury regarding their determination of damages.

## II.    LEGAL ARGUMENT

### A.    THE ADMISSION OF THE AFOREMENTIONED TESTIMONY USURP'S THE JURY'S ROLE IN DETERMING THE EXTENT OF PLAINTIFF'S DAMAGES.

The Eastern District of Pennsylvania has previously addressed this issue and analyzed same as if the testimony were expert testimony.  *See Morse v. Jimenez*, 2004 WL1211958 (E.D.Pa. 2004), attached hereto as Exhibit **B**.  In *Morse*, United States Magistrate Judge Hart found this same type of evidence was analogous to expert testimony because, "although no expert would take the stand, expert testimony would be given through an administrative decision, granting [plaintiff] disability benefits."  *Id.*  Further, Judge Hart determined that the admittance of such evidence would usurp the jury's role in

determining the extent of the plaintiff's injuries, because a government agency has made the determination of permanent disability. *Id.*

In making this determination, Judge Hart notes that the Social Security Administration's decision of disability was based on an entirely different standard of review and included evidence of impairments not relevant to the case at issue. *Id.* In this regard, Judge Hart precluded any reference to the plaintiff's Social Security application, proceedings or receipt of benefits as an usurpation of the jury's role. *Id., citing Whitmill v. City of Philadelphia*, 29 F.Supp.2d 241, 247 (E.D.Pa. 1998). "[The use of expert testimony] must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Whitmill* at 247, *quoting United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd Cir. 1991).

As in *Morse*, the evidence at issue in the current litigation, namely Plaintiff's being determined "disabled" by the Social Security Administration, usurps the role of the jury in applying the applicable law to the facts before it. In determining whether an individual is disabled for purposes of the receipt of disability benefits, the concern is simply whether an individual is precluded from obtaining gainful employment based upon certain impairments; in other words, the concern is not how, why or what caused any of the related impairments, nor is it limited to specific injuries. Further, in the case at bar, in making the determination that Plaintiff was "disabled" and eligible for disability benefits, the Administrative Law Judge considered the lack of availability of sedentary jobs in Plaintiff's locale based upon a Social Security Administration doctor's opinion that Plaintiff was **not** totally disabled from all work and could perform same.

At issue in this case is the extent of Plaintiff's injuries as a result of the subject incident. If a jury is told that the Plaintiff is "totally disabled" as determined by the Social Security Administration, there is no decision for the jury to make. Furthermore, in this matter, both sides have presented

expert opinions regarding the ability of plaintiff to work.  More fundamentally, the defendant's expert cites a compelling absence of objective medical evidence to support plaintiff's contention that the workplace incident in question caused a permanent injury of some kind.  It is the jury's role to assess the credibility of this testimony without being misled into thinking that this analysis has already been performed by the Social Security Administration.

### B.   THE ADMISSION OF THE AFOREMENTIONED TESTIMONY WOULD ONLY SERVE TO CONFUSE AND MISLEAD THE JURY.

Courts have found that, while evidence regarding the granting or denial of Social Security disability benefits may be of some nominal value, the introduction of such evidence will create a considerable amount of confusion regarding the issues with respect to the applicable standards and substantive content of such standards to be applied in resolving the factual and legal issues as to the existence of plaintiff's alleged disability.  Notably, this is an issue of first impression within the Eastern District of Pennsylvania with the exception of the case decided by United States Magistrate Judge Hart cited above.  *See Allen v. Exxon Shipping Co.*, 639 F.Supp. 1545, 1547 (D.Me. 1986) (granting plaintiff's motion *in limine* to exclude evidence regarding plaintiff's denial of Social Security disability benefits in a workers compensation action as overly prejudicial and likely to create significant confusion regarding the issues and applicable standards); *Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 171 (Tenn. 1978) (excluding evidence of plaintiff's status of disabled according to the Social Security Administration for purposes of showing the existence or extent of an employee's permanent disability in a workers compensation suit); *Holmes v. University of Pennsylvania Health Systems*, 2007 WL 2687657 (Pa.Com.Pl. 2007), attached hereto as Exhibit **C,** (finding that the issues at the Administrative hearing regarding plaintiff's disability benefits  and the issues in a negligence action are very different and require different burdens of proof).

Further, courts have found that the introduction of such evidence would create a high level of risk of misleading the jury and/or creating unfair prejudice.  *Allen* at 1547.  The *Holmes* Court noted

that the jury in a negligence action was asked to determine whether defendants were negligent and, if so, whether the negligence was a factual cause of plaintiff's alleged injury, but these issues were **not** before the Administrative Law Judge. "No one doubts that an Administrative Law Judge found plaintiff disabled from engaging in substantial gainful activity. However, that finding is **not** relevant to the issue of whether defendants were negligent… that is, whether defendant breached the standard of care and whether that breach was a factual cause of plaintiff's injuries. *Holmes*, emphasis added. The Administration Law Judge is not concerned **why** a plaintiff is disabled, simply that he **is** disabled.

Plaintiff in this case is seeking to admit evidence that the Social Security Administration has found him to be completely disabled, but as noted above, it is important to note that the Administrative Law Judge was not faced with questions regarding the cause of plaintiff's injuries. By allowing plaintiff to introduce such evidence, there is a high probability that the jury would be confused and/or mislead into believing that there is no reason for them to consider the extent of plaintiff's injuries as a government entity as already decided that he is completely disabled.

Further, a jury might not make the distinction that, even if they believe that plaintiff is completely disabled, that the Administrative Law Judge is taking into account the plaintiff's complete medical history and is not limited his decision to injuries that may have occurred as a result of this one specific incident. For example, diagnostic studies of the plaintiff in this case indicate that he suffers exclusively from cervical degenerative disease. The imaging studies as reported by the plaintiff's radiologists do not point to a traumatically induced change to the anatomy of his cervical spine. While such a disease **could be**[1] aggravated by a traumatic incident, such a disease is not caused by one; therefore, plaintiff's degeneration in his cervical spine may have caused an Administrative Law Judge to find him completely disabled, without regard for how such a disability was caused, but a jury could

---

[1] Which is also a point in dispute for initially plaintiff told several co-workers he was not hurt; several co-workers also observed that he did not appear to be hurt.

be confused or misled into thinking that such a decision indicates that the subject incident caused the plaintiff to be determined completely disabled.

Even more egregious regarding the specific facts at issue in this case, the Administrative Law Judge made the determination of disabled as to the plaintiff notwithstanding the fact that the Social Security doctor indicated that plaintiff **could** engage in sedentary work. The Administrative Law Judge came to this conclusion by considering the available jobs in the plaintiff's locale. The jury will be led to believe that the plaintiff is completely disabled from ever working in **any** setting as a result of the Social Security Administration's decision even though it was found that the plaintiff **could** perform sedentary work. This is clearly misleading to the jury who is charged with determining the extent of plaintiff's "injuries" without regard to the availability of sedentary jobs. By permitting the plaintiff to introduce evidence that the Social Security Administration has determined him to be completely disabled from future employment, the jury will be significantly confused or mislead into believing that the extent of plaintiff's injuries has already been determined.

C.   **THE ADMISSION OF THE AFOREMENTIONED EVIDENCE WOULD CAUSE UNDUE DELAY AS SULLAIR WOULD BE FORCED TO DEFEND AGAINST SUCH EVIDENCE BY ARGUING BOTH THE VALIDITY OF THE DECISION AS WELL AS EXPLAIN THE DIFFERENCES IN STANDARDS.**

The *Allen* Court cited above also determined that such evidence should be properly excluded as the introduction of same would likely lead to undue delay and would waste the time of the Court, the parties and the jury. *Allen* at 1547. The Court found that the introduction of evidence related to the plaintiff's application for and denial of disability benefits would force the plaintiff to counter the evidence and explain the decision's significance or lack thereof. *Id.* The admission of such evidence would create **a trial within the trial** regarding the validity of the Social Security Administration's decision to grant the plaintiff in this case permanent disability benefits. Further, Sullair would be required to educate the jury unnecessarily regarding the standards with which disability is determined

by the Social Security Administration and how those standards differ from those at issue in the current litigation.

Such a waste of time is wholly unnecessary as both plaintiff and Sullair will be presenting evidence by way of expert testimony during the trial regarding the extent of plaintiff's injuries as a result of this incident; there is, therefore, no need to muddy up the waters with nominally relevant evidence that would only serve to elongate the trial. The admission of evidence that plaintiff was declared disabled by the Social Security Administration in support of plaintiff's position regarding the extent of his damages would, therefore, only serve to cause undue delay and waste the time of all persons involved in the litigation of same.

D.   THE AFOREMENTIONED EVIDENCE SHOULD NOT BE ADMITTED AS DEFENDANT WAS NOT A PARTY TO THE SOCIAL SECURITY PROCEEDING AND HAD NO OPPORTUNITY TO REBUT PLAINTIFF'S PROOFS.

The introduction of such evidence is further prejudicial and should be excluded based upon defendant's inability to participate in the Social Security Administration's hearing regarding plaintiff's disability. *Bingham* at 171. Since Sullair was not a party to plaintiff's disability proceeding, it was not permitted to provide evidence to rebut plaintiff's claim that he was permanently disabled nor was it permitted to cross-examine any witnesses that provided testimony in support of same. Sullair would certainly have challenged the plaintiff's medical claims had it been granted an opportunity to participate. It would be patently unfair for plaintiff to be able to introduce such a decision as evidence against Sullair when Sullair was never afforded the opportunity to participate in that hearing or provide any argument against such a decision.

III.    **CONCLUSION**

Based on the foregoing, evidence regarding plaintiff's status as disabled by the Social Security Administration is therefore inadmissible, and plaintiff should be precluded from introducing same at trial. Any reference to same in plaintiff's experts' reports must be stricken.

**WHEREFORE,** Defendant, Sullair Corporation, respectfully requests that the Court enter the attached Order, barring testimony at trial concerning Plaintiff, James Roy's status as disabled as determined by the Social Security Administration as such testimony usurps the role of the jury, only serves to both confuse and mislead the jury and the admission of same would be highly prejudicial.

Respectfully Submitted,
**MAYFIELD, TURNER, O'MARA,**
**DONNELLY & McBRIDE, P.C.**

Date: _10/19/10_                    BY: _____
                                         W. Thomas McBride
                                         Bennett E. Langman

9051-08
**MAYFIELD, TURNER, O'MARA,**
**DONNELLY & McBRIDE, P.C.**
By: W. Thomas McBride
Identification No. 39293
By: Bennett E. Langman
Identification No. 205185
1617 J.F.K. Blvd., Suite 932
Philadelphia, PA 19103
(215) 564-0500
*Attorneys for Defendant,*
*Sullair Corporation*

---

| | |
|---|---|
| James Roy, | : UNITED STATES DISTRICT COURT |
|     Plaintiff | : EASTERN DISTRICT OF PENNSYLVANIA |
|     v. | : |
| Sullair Corporation and | : |
| Giles & Ransome, Inc. d/b/a | : 2:09-1486 |
| Ransome Rental, | : |
|     Defendants. | : |

---

## CERTIFICATE OF SERVICE

    I, Bennett E. Langman, Esquire, attorney for defendant Sullair Corporation, hereby certify

that a true and correct copy of the within *Motion in Limine* was served on the following parties via the

United States District Court's Electronic Filing System, on the date set forth below:

Steven M. Lipschutz, Esquire
1800 J.F.K. Blvd., 14th Floor
Philadelphia, PA 19103

Marc B. Zingarini, Esquire
Michael B. Pullano, Esquire
Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP
2000 Market Street, 13th Floor
Philadelphia, PA 19103

            **MAYFIELD, TURNER, O'MARA,**
            **DONNELLY & McBRIDE, P.C.**

BY: _____
                Bennett E. Langman

DATE: 10/19/10

# EXHIBIT "A"

| Court of Common Pleas of Philadelphia County<br>Trial Division<br>**Civil Cover Sheet** | For Prothonotary Use Only (Docket Number)<br><br>*090102939* |
|---|---|

| PLAINTIFF'S NAME<br>**JAMES ROY** | DEFENDANT'S NAME<br>**SULLAIR CORPORATION** |
|---|---|
| PLAINTIFF'S ADDRESS<br>**10836 WEST PLOEGSTRA ROAD<br>RUDYARD, MI 49780** | DEFENDANT'S ADDRESS<br>**116 PINE STREET-SUITE 300<br>HARRISBURG, PA 17101** |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>**GILES & RANSOME, INC.** |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>**2975 GALLOWAY ROAD<br>BENSALEM, PA 19020** |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |

| TOTAL NUMBER OF PLAINTIFF'S<br>**1** | TOTAL NO. OF DEFENDANTS<br>**2** | COMMENCEMENT OF ACTION<br>☑ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |
|---|---|---|

| AMOUNT IN CONTROVERSY<br>☐ $50,000.00 or less<br>☑ More than $50,000.00 | COURT PROGRAMS<br>☐ Arbitration   ☐ Mass Tort   ☐ Commerce   ☐ Settlement<br>☑ Jury   ☐ Savings Action   ☐ Minor Court Appeal   ☐ Minors<br>☐ Non-Jury   ☐ Petition   ☐ Statutory Appeals   ☐ W/D/Survival<br>☐ Other: |
|---|---|

CASE TYPE AND CODE   (SEE INSTRUCTIONS)

**2P - PRODUCT LIABILITY**

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)<br><br>**NONE** | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES        NO<br>☐        ☐<br>☐        ☐<br>☐        ☐ |
|---|---|

TO THE PROTHONOTARY:
Kindly enter my Appearance on behalf of Plaintiff/Petitioner/Appellant: **Steven M. Lipschutz, Esquire**
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANTS ATTORNEY<br>**STEVEN M. LIPSCHUTZ, ESQUIRE** | ADDRESS (SEE INSTRUCTIONS)<br>**1800 JOHN F. KENNEDY BOULEVARD<br>14TH FLOOR<br>PHILADELPHIA, PA 19103** |
|---|---|
| PHONE NUMBER<br>**(267)256-0660**   FAX NUMBER<br>**(267)256-0758** | |
| SUPREME COURT IDENTIFICATION NO.<br>**04072** | E-MAIL ADDRESS |
| SIGNATURE | DATE<br>*1·27·09* |

| | |
|---|---|
| **STEVEN M. LIPSCHUTZ, P.C.** | **THIS IS A MAJOR CASE.** |
| BY:  STEVEN M. LIPSCHUTZ, ESQUIRE | **JURY TRIAL OF TWELVE** |
| ATTORNEY I.D. NO:   04072 | **IS REQUESTED.** |
| 1800 J.F. KENNEDY BOULEVARD | |
| 14TH FLOOR | |
| PHILADELPHIA, PA 19103 | |
| (267) 256-0660 | |
| ATTORNEY FOR PLAINTIFF | |

---

JAMES ROY                                      :        PHILADELPHIA COUNTY
10836 WEST PLOEGSTRA ROAD              :        COURT OF COMMON PLEAS
RUDYARD, MI 49780                          :
                                                           :
                                                           :
                                                           :
                                                           :
VS.                                             :        *Jan. Term 2009*
                                                           :
                                                           :
                                                           :
SULLAIR CORPORATION                       :
c/o C.T. CORPORATION SYSTEM, INC.   :        *No. 2939*
116 PINE STREET-SUITE 300                :
HARRISBURG, PA 17101                      :
        AND                                     :
GILES & RANSOME, INC.                     :
d/b/a RANSOME RENTAL                      :
2975 GALLOWAY ROAD                        :
BENSALEM, PA 19020                         :

---

## COMPLAINT IN CIVIL ACTION
## 2P - PRODUCTS LIABILITY

**NOTICE**

You have been sued in court.If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
One Reading Center
Philadelphia, PA 19107
Telephone: (215) 238 - 1701

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas de estas demandas expuestasen las paginas siguientes, usted tiene veinte (20) dias de plazo a partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedas u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: (215) 238 - 1701

**STEVEN M. LIPSCHUTZ, P.C.**
BY:  STEVEN M. LIPSCHUTZ, ESQUIRE
ATTORNEY I.D. NO:   04072
1800 J.F. KENNEDY BOULEVARD
14TH FLOOR
PHILADELPHIA, PA 19103
(267) 256-0660
ATTORNEY FOR PLAINTIFF

**THIS IS A MAJOR CASE.
JURY TRIAL OF TWELVE
IS REQUESTED.**

---

| | |
|---|---|
| JAMES ROY<br>10836 WEST PLOEGSTRA ROAD<br>RUDYARD, MI 49780<br><br><br>            VS.<br><br><br>SULLAIR CORPORATION<br>c/o C.T. CORPORATION SYSTEM, INC.<br>116 PINE STREET-SUITE 300<br>HARRISBURG, PA 17101<br>            AND<br>GILES & RANSOME, INC.<br>d/b/a RANSOME RENTAL<br>2975 GALLOWAY ROAD<br>BENSALEM, PA 19020 | : <br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS |

---

## COMPLAINT IN CIVIL ACTION
### (2P - PRODUCTS LIABILITY)

Plaintiff, JAMES ROY, by and through his attorneys, Steven M. Lipschutz, P.C., claims of defendants, SULLAIR CORPORATION and GILES & RANSOME, INC. d/b/a RANSOME RENTAL, for a sum in excess of $50,000.00, each, exclusive of interest and costs, damages for delay and attorneys' fees, and in support thereof, avers as follows:

     1.     Plaintiff, JAMES ROY, is an adult individual who resides at 10836 West Ploegstra Road, Rudyard, MI 49780.

     2.     Defendant, SULLAIR CORPORATION, is an Indiana Corporation, at all times relevant hereto regularly conducting business in Philadelphia County, and can be

served are of its corporate agent, C.T. CORPORATION SYSTEM, located at 116 Pine Street, Suite 300, Harrisburg, PA 17101, regularly conducting business in the City of Philadelphia, and at all times material hereto, owned operated, manufactured, produced, controlled distributed and/or placed into the stream of commerce heavy equipment.

3.    Defendant, GILES & RANSOME, INC. d/b/a RANSOME RENTALS (hereinafter referred to as "RANSOME"), is a Pennsylvania Corporation, at all times relevant hereto regularly conducting business in Philadelphia County, and can be served at its corporate address located at 2975 Galloway Road, Bensalem, PA 19020, and at all times material hereto, owned operated, manufactured, produced, controlled distributed and/or placed into the stream of commerce heavy equipment.

4.    At all times material hereto, defendants acted by and through their duly authorized agents, servants, workmen and/or employees acting on their masters' business and within the scope and course of their employment.

5.    On or about February 10, 2007, plaintiff was lawfully in the course and scope of his employment with Compass Environmental, Inc. At all times relevant hereto, Plaintiff was exercising due care and caution for his own safety, when due to the negligence, carelessness and recklessness of the defendant, the air compressor he was using was designed, constructed, produced, manufactured, assembled, and distributed and sold by defendants, malfunctioned causing plaintiff to sustain serious personal injuries, the details of which are more specifically set forth below.

6.    On the aforesaid date, Plaintiff's employer had rented the defective equipment from defendant, RANSOME.

7.    Plaintiff avers that said equipment was unsafe, defective and unfit for placement in the stream of commerce to be used by the public.

8.    Plaintiff avers that said equipment was negligently manufactured, constructed, maintained and inspected, and was a hazard to the public.

## COUNT ONE-NEGLIGENCE
## JAMES ROY VS. SULLAIR CORPORATION

9.    Plaintiff incorporates paragraphs one through eight (1-8), above by reference herein as if set forth at length below.

10.    The negligence, recklessness and carelessness of each of the defendant herein,  which caused plaintiff's injuries and damages consisted of:

(a)    failing to properly and/or adequately make, design, manufacture, produce, assemble, distribute, and/or sell the aforesaid air compressor in a safe condition;

(b)    failing to properly provide and place proper warnings, cautions, and/or directions concerning the dangers and/or limitations of the aforesaid product;

(c)    failing to properly and/or adequately test, and/or inspect the product in question prior to sale and distribution in order to provide a safe product;

(d)    violating applicable state of the art in science and engineering industry standards in connection with the design, manufacture, assembly, inspection and warning of the product in question;

(e)    failing to disclose to purchasers or users that the product was defectively designed;

(g)    failing to correct a dangerous condition which was known or should have been known to defendant prior to distribution and/or sale to the general public;

(h)    failing to disclose to and warn purchasers or users including plaintiff, that the product in question was in a dangerous defective condition and was unfit for the purpose for which it was intended;

(i)    failing to properly and/or adequately label, package, sell and/or distribute the product in question with proper warnings of such defects;

(j)    failing to exercise reasonable care and take adequate precautions to warn intermediate suppliers of the subject product of the dangers to which those using the product would be exposed;

(j)     breaching its warranties, expressed and implied, under the
        <u>Restatement of Torts, 2d</u>, §402A;

(k)     being guilty of willful, wanton, and reckless misconduct in the
        foregoing;

(l)     failing to use the degree of care, skill, foresight and caution
        required under the circumstances; and

(m)     such other acts or omissions by defendant constituting negligence
        which may be ascertained during the course of discovery or at the
        trial of this case.

11.     As a result of the defendant's negligence and the accident caused
thereby, plaintiff suffered severe injuries to his back, shoulder, neck, body, limbs and
internal organs, more particularly, he sustained:  persistent cervical, shoulder girdle,
thoracic and lumbosacral strain; contusion of the cervical spine; disc herniation at C3-4,
C4-5, C6-7; as well as various other injuries, including aggravation of pre-existing
conditions, causing him to endure great pain and suffering; he sustained further injuries
to the bones, muscles, nerves, tissues and ligaments of his body, the full extent of
which has yet to be determined, as well as various other injuries and injury to his nerves
and nervous system including, but not limited to, anxiety reaction and post-traumatic
syndrome; he has been required to extend various sums of money for medicine and
medical attention and to lose time from him usual activities, all of which are permanent
in nature and may extend for an indefinite time into the future.

12.     As a further result of the foregoing, the plaintiff has been obliged to
receive and undergo medical attention and care and to incur various expenses for the
same, and he may be obliged to continue to undergo such medical care and to incur
such medical expenses for an indefinite time in the future.

13.     As a further result of the foregoing, the plaintiff has been prevented from
and hindered in performing his usual duties and occupations, thereby impairing his
earning capacity, which impairment may be permanent, all to his great financial damage
and loss.

14.     As a further result of the foregoing, the plaintiff has been prevented from and hindered in performing his customary activities, and he has been unable to enjoy the pleasures of life, all of which may continue for an indefinite time in the future.

15.     As a further result of the foregoing, the plaintiff has incurred various incidental expenses and he may continue to incur such expenses for an indefinite time in the future.

WHEREFORE, Plaintiff, JAMES ROY, demands judgment against the defendant, SULLAIR CORPORATION, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with interest, costs, attorneys' fees and damages for delay.

## COUNT TWO-BREACH OF WARRANTY
## JAMES ROY VS. SULLAIR CORPORATION

16.     Plaintiff incorporates paragraphs one through fifteen (1-15), above by reference herein as if set forth at length below.

17.     At the time of contract for the sale of the subject product, the defendant had reason to know the particular purposes for which the subject product was required and knew that its skill and judgment were being relied upon to furnish a suitable product and impliedly warranted that the subject product was fit for such purpose and the defendant breached its implied warranty of a fitness for a particular purpose in derogation of Pa. C.S.A. § 2-315.

18.     In addition, the defendant breached its implied warranty of merchantability in derogation of 12 Pa. C.S.A. § 12-314 (c) in that the subject product was not fit for the ordinary uses for which such goods are used.

19.     In addition, the defendant breached any and all express warranties made or relating to the subject product which became part of the basis of the bargain in derogation of 12 Pa. C.S.A. § 12-313.

20.     All of the injuries and damages incurred by the Plaintiff, JAMES ROY, as more fully set out in Count I above, were incurred as a direct and proximate result of the breach of implied warranties of fitness for particular purpose and merchantability in derogation of 12 Pa. C.S.A. § 2-315 and 2-314 (c), by each of the defendants

individually, and as a result of the breach of express warranties in derogation of 12 Pa. C.S.A. § 2-313 by each of the defendants individually.

21.     As a result of the defendant's negligence and the accident caused thereby, plaintiff suffered severe injuries to his back, shoulder, neck, body, limbs and internal organs, more particularly, he sustained:  persistent cervical, shoulder girdle, thoracic and lumbosacral strain; contusion of the cervical spine; disc herniation at C3-4, C4-5, C6-7; as well as various other injuries, including aggravation of pre-existing conditions, causing him to endure great pain and suffering; he sustained further injuries to the bones, muscles, nerves, tissues and ligaments of his body, the full extent of which has yet to be determined, as well as various other injuries and injury to his nerves and nervous system including, but not limited to, anxiety reaction and post-traumatic syndrome; he has been required to extend various sums of money for medicine and medical attention and to lose time from him usual activities, all of which are permanent in nature and may extend for an indefinite time into the future.

22.     As a further result of the foregoing, the plaintiff has been obliged to receive and undergo medical attention and care and to incur various expenses for the same, and he may be obliged to continue to undergo such medical care and to incur such medical expenses for an indefinite time in the future.

23.     As a further result of the foregoing, the plaintiff has been prevented from and hindered in performing his usual duties and occupations, thereby impairing his earning capacity, which impairment may be permanent, all to his great financial damage and loss.

24.     As a further result of the foregoing, the  plaintiff has been prevented from and hindered in performing his customary activities, and he has been unable to enjoy the pleasures of life, all of which may continue for an indefinite time in the future.

25.     As a further result of the foregoing, the plaintiff has incurred various incidental expenses and he may continue to incur such expenses for an indefinite time in the future.

WHEREFORE, plaintiff, JAMES ROY, demands judgment against the defendant, SULLAIR CORPORATION, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with interest, costs, attorneys' fees and damages for delay.

## COUNT THREE-STRICT LIABILITY
## JAMES ROY VS. DEFENDANT

26.     Plaintiff incorporates paragraphs one through twenty-five (1-25), above by reference herein as if set forth at length below.

27.     Plaintiff avers Defendant knew, or in the exercise of reasonable care, should and/or could have known that the aforesaid air compressor would be ultimately sold to the public and would be used by plaintiff and would be relied upon by such persons to be free from all defects and fit for the purpose for which it was intended, for which said product was designed, manufactured, produced, packaged, sold, distributed, and/or otherwise placed in the stream of commerce.

28.     Pursuant to Restatement of Torts, 2d, §402A, defendant's position as a designer, manufacturer, producer, packager, assembler, seller, and/or distributor of the product in question, defendant is strictly liable to the plaintiff for the following reasons:

(a)     defendant, as designer, manufacturer, producer, assembler, packager, distributor and/or seller, is engaged in the business, inter alia, of selling items such as the product in question and placing said item into the stream of commerce;

(b)     at the time of the design, manufacture and sale of the product in question, defendant knew or had reason to know that said product would be used by the plaintiff, and other persons similarly situated, as the ultimate users or consumers;

(c)     that said product was placed into the stream of commerce and/or sold by each of the defendant in a defective condition, unreasonably dangerous to the plaintiff and others similarly situated, as users or consumers, and at all times material hereto, that said product was expected to and did reach the users or consumers without substantial change in the condition in which it was manufactured and sold;

(d) that said product was dangerous and/or defective in that it was not free from all defects and incapable of being made safe for its ordinary and intended use and purpose, and those uses believed safe by the general community;

(e) that said product was dangerous and/or defective in that it was defectively, designed, manufactured, constructed and assembled and otherwise defective because of the lack of and/or inadequate warnings and instructions of use thereof and was improperly constructed and manufactured and was sold in a dangerous condition in that it created a safety risk;

(f) that said product was dangerous and/or defective in that the defendant failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm inherent in said product.

29.     As a result of the defendant's negligence and the accident caused thereby, plaintiff suffered severe injuries to his back, shoulder, neck, body, limbs and internal organs, more particularly, he sustained:  persistent cervical, shoulder girdle, thoracic and lumbosacral strain; contusion of the cervical spine; disc herniation at C3-4, C4-5, C6-7; as well as various other injuries, including aggravation of pre-existing conditions, causing him to endure great pain and suffering; he sustained further injuries to the bones, muscles, nerves, tissues and ligaments of his body, the full extent of which has yet to be determined, as well as various other injuries and injury to his nerves and nervous system including, but not limited to, anxiety reaction and post-traumatic syndrome; he has been required to extend various sums of money for medicine and medical attention and to lose time from him usual activities, all of which are permanent in nature and may extend for an indefinite time into the future.

30.     As a further result of the foregoing, the plaintiff has been obliged to receive and undergo medical attention and care and to incur various expenses for the same, and he may be obliged to continue to undergo such medical care and to incur such medical expenses for an indefinite time in the future.

31.     As a further result of the foregoing, the plaintiff has been prevented from and hindered in performing his usual duties and occupations, thereby impairing his

earning capacity, which impairment may be permanent, all to his great financial damage and loss.

32.     As a further result of the foregoing, the plaintiff has been prevented from and hindered in performing his customary activities, and he has been unable to enjoy the pleasures of life, all of which may continue for an indefinite time in the future.

33.     As a further result of the foregoing, the plaintiff has incurred various incidental expenses and he may continue to incur such expenses for an indefinite time in the future.

34.     As a direct and proximate result of the unreasonable dangerous defects of subject product, plaintiff was caused to suffer the serious personal injuries set forth above, and to endure great pain and suffering.

35.     Defendant is strictly liable for all of the injuries and dangers sustained by the plaintiff, JAMES ROY.

WHEREFORE, plaintiff, JAMES ROY, demands judgment against the defendant, SULLAIR CORPORATION, in an amount in excess of Fifty Thousand Dollars ($50,000.00) plus interest, costs of suit, attorney fees and damages for delay.

### COUNT FOUR-NEGLIGENCE
### JAMES ROY VS. RANSOME

36.     Plaintiff incorporates paragraphs one through thirty-five (1-35), above by reference herein as if set forth at length below.

37.     Plaintiff further avers that it was the duty of the defendant to exercise reasonable care to protect him from injuries either by personally inspecting the product or by authorizing inspections or by other affirmative acts such as warning him of the existence of the aforesaid dangerous conditions.

38.     Plaintiff avers that it was the duty of the defendant to maintain said product in a reasonable and safe condition for its intended use and free from all defects and other conditions which defendant knew or should have known existed and, which would render a dangerous and unsafe condition and would present an unreasonable risk of harm to persons, specifically the plaintiff.

39.     The negligence, recklessness and carelessness of the defendant herein, which caused plaintiff's injuries and damages consisted of:

(a)     failing to properly and/or adequately make, design, manufacture, produce, assemble, distribute, and/or sell the aforesaid air compressor in a safe condition;

(b)     failing to properly provide and place proper warnings, cautions, and/or directions concerning the dangers and/or limitations of the aforesaid product;

(c)     failing to properly and/or adequately test, and/or inspect the product in question prior to sale and distribution in order to provide a safe product;

(d)     violating applicable state of the art in science and engineering industry standards in connection with the design, manufacture, assembly, inspection and warning of the product in question;

(e)     failing to disclose to purchasers or users that the product was defectively designed;

(g)     failing to correct a dangerous condition which was known or should have been known to defendant prior to distribution and/or sale to the general public;

(h)     failing to disclose to and warn purchasers or users including plaintiff, that the product in question was in a dangerous defective condition and was unfit for the purpose for which it was intended;

(i)     failing to properly and/or adequately label, package, sell and/or distribute the product in question with proper warnings of such defects;

(j)     failing to exercise reasonable care and take adequate precautions to warn intermediate suppliers of the subject product of the dangers to which those using the product would be exposed;

(j)     breaching its warranties, expressed and implied, under the Restatement of Torts, 2d, §402A;

(k)     being guilty of willful, wanton, and reckless misconduct in the foregoing;

(l)     failing to use the degree of care, skill, foresight and caution required under the circumstances; and

(m)    such other acts or omissions by defendant constituting negligence which may be ascertained during the course of discovery or at the trial of this case.

40.     As a result of the defendant's negligence and the accident caused thereby, plaintiff suffered severe injuries to his back, shoulder, neck, body, limbs and internal organs, more particularly, he sustained:  persistent cervical, shoulder girdle, thoracic and lumbosacral strain; contusion of the cervical spine; disc herniation at C3-4, C4-5, C6-7; as well as various other injuries, including aggravation of pre-existing conditions, causing him to endure great pain and suffering; he sustained further injuries to the bones, muscles, nerves, tissues and ligaments of his body, the full extent of which has yet to be determined, as well as various other injuries and injury to his nerves and nervous system including, but not limited to, anxiety reaction and post-traumatic syndrome; he has been required to extend various sums of money for medicine and medical attention and to lose time from him usual activities, all of which are permanent in nature and may extend for an indefinite time into the future.

41.     As a further result of the foregoing, the plaintiff has been obliged to receive and undergo medical attention and care and to incur various expenses for the same, and he may be obliged to continue to undergo such medical care and to incur such medical expenses for an indefinite time in the future.

42.     As a further result of the foregoing, the plaintiff has been prevented from and hindered in performing his usual duties and occupations, thereby impairing his earning capacity, which impairment may be permanent, all to his great financial damage and loss.

43.     As a further result of the foregoing, the  plaintiff has been prevented from and hindered in performing his customary activities, and he has been unable to enjoy the pleasures of life, all of which may continue for an indefinite time in the future.

44.     As a further result of the foregoing, the plaintiff has incurred various incidental expenses and he may continue to incur such expenses for an indefinite time in the future.

WHEREFORE, Plaintiff, JAMES ROY, demands judgment against the defendant, GILES & RANSOME, INC. d/b/a RANSOME RENTALS, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with interest, costs, attorneys' fees and damages for delay.

## COUNT FIVE-BREACH OF WARRANTY
## JAMES ROY VS. RANSOME

45.     Plaintiff incorporates paragraphs one through forty-four (1-44), above by reference herein as if set forth at length below.

46.     At the time of contract for the sale of the subject product, the defendant had reason to know the particular purposes for which the subject product was required and knew that its skill and judgment were being relied upon to furnish a suitable product and impliedly warranted that the subject product was fit for such purpose and the defendant breached its implied warranty of a fitness for a particular purpose in derogation of Pa. C.S.A. § 2-315.

47.     In addition, the defendant breached its implied warranty of merchantability in derogation of 12 Pa. C.S.A. § 12-314 (c) in that the subject product was not fit for the ordinary uses for which such goods are used.

48.     In addition, the defendant breached any and all express warranties made or relating to the subject product which became part of the basis of the bargain in derogation of 12 Pa. C.S.A. § 12-313.

49.     All of the injuries and damages incurred by the Plaintiff, JAMES ROY, as more fully set out in Count I above, were incurred as a direct and proximate result of the breach of implied warranties of fitness for particular purpose and merchantability in derogation of 12 Pa. C.S.A. § 2-315 and 2-314 (c), by each of the defendants individually, and as a result of the breach of express warranties in derogation of 12 Pa. C.S.A. § 2-313 by each of the defendants individually.

50.     As a result of the defendant's negligence and the accident caused thereby, plaintiff suffered severe injuries to his back, shoulder, neck, body, limbs and internal organs, more particularly, he sustained: persistent cervical, shoulder girdle, thoracic and lumbosacral strain; contusion of the cervical spine; disc herniation at C3-4,

C4-5, C6-7; as well as various other injuries, including aggravation of pre-existing conditions, causing him to endure great pain and suffering; he sustained further injuries to the bones, muscles, nerves, tissues and ligaments of his body, the full extent of which has yet to be determined, as well as various other injuries and injury to his nerves and nervous system including, but not limited to, anxiety reaction and post-traumatic syndrome; he has been required to extend various sums of money for medicine and medical attention and to lose time from him usual activities, all of which are permanent in nature and may extend for an indefinite time into the future.

51.     As a further result of the foregoing, the plaintiff has been obliged to receive and undergo medical attention and care and to incur various expenses for the same, and he may be obliged to continue to undergo such medical care and to incur such medical expenses for an indefinite time in the future.

52.     As a further result of the foregoing, the plaintiff has been prevented from and hindered in performing his usual duties and occupations, thereby impairing his earning capacity, which impairment may be permanent, all to his great financial damage and loss.

53.     As a further result of the foregoing, the  plaintiff has been prevented from and hindered in performing his customary activities, and he has been unable to enjoy the pleasures of life, all of which may continue for an indefinite time in the future.

54.     As a further result of the foregoing, the plaintiff has incurred various incidental expenses and he may continue to incur such expenses for an indefinite time in the future.

WHEREFORE, Plaintiff, JAMES ROY, demands judgment against the defendant, GILES & RANSOME, INC. d/b/a RANSOME RENTALS, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with interest, costs, attorneys' fees and damages for delay.

## COUNT SIX-STRICT LIABILITY
## JAMES ROY VS. RANSOME

55.     Plaintiff incorporates paragraphs one through fifty-four (1-54), above by reference herein as if set forth at length below.

56.     Plaintiff avers Defendant knew, or in the exercise of reasonable care, should and/or could have known that the aforesaid air compressor would be ultimately sold to the public and would be used by plaintiff and would be relied upon by such persons to be free from all defects and fit for the purpose for which it was intended, for which said product was designed, manufactured, produced, packaged, sold, distributed, and/or otherwise placed in the stream of commerce.

57.     Pursuant to Restatement of Torts, 2d, §402A, defendant's position as a designer, manufacturer, producer, packager, assembler, seller, and/or distributor of the product in question, defendant is strictly liable to the plaintiff for the following reasons:

(b)     defendant, as designer, manufacturer, producer, assembler, packager, distributor and/or seller, is engaged in the business, inter alia, of selling items such as the product in question and placing said item into the stream of commerce;

(b)     at the time of the design, manufacture and sale of the product in question, defendant knew or had reason to know that said product would be used by the plaintiff, and other persons similarly situated, as the ultimate users or consumers;

(c)     that said product was placed into the stream of commerce and/or sold by each of the defendant in a defective condition, unreasonably dangerous to the plaintiff and others similarly situated, as users or consumers, and at all times material hereto, that said product was expected to and did reach the users or consumers without substantial change in the condition in which it was manufactured and sold;

(d)     that said product was dangerous and/or defective in that it was not free from all defects and incapable of being made safe for its ordinary and intended use and purpose, and those uses believed safe by the general community;

(e)     that said product was dangerous and/or defective in that it was defectively, designed, manufactured, constructed and assembled and otherwise defective because of the lack of and/or inadequate warnings and instructions of use thereof and was improperly constructed and manufactured and was sold in a dangerous condition in that it created a safety risk;

(f)     that said product was dangerous and/or defective in that the
defendant failed to give adequate or sufficient warnings or
instructions about the risks, dangers and harm inherent in said
product.

58.     As a result of the defendant's negligence and the accident caused
thereby, plaintiff suffered severe injuries to his back, shoulder, neck, body, limbs and
internal organs, more particularly, he sustained:  persistent cervical, shoulder girdle,
thoracic and lumbosacral strain; contusion of the cervical spine; disc herniation at C3-4,
C4-5, C6-7; as well as various other injuries, including aggravation of pre-existing
conditions, causing him to endure great pain and suffering; he sustained further injuries
to the bones, muscles, nerves, tissues and ligaments of his body, the full extent of
which has yet to be determined, as well as various other injuries and injury to his nerves
and nervous system including, but not limited to, anxiety reaction and post-traumatic
syndrome; he has been required to extend various sums of money for medicine and
medical attention and to lose time from him usual activities, all of which are permanent
in nature and may extend for an indefinite time into the future.

59.     As a further result of the foregoing, the plaintiff has been obliged to
receive and undergo medical attention and care and to incur various expenses for the
same, and he may be obliged to continue to undergo such medical care and to incur
such medical expenses for an indefinite time in the future.

60.     As a further result of the foregoing, the plaintiff has been prevented from
and hindered in performing his usual duties and occupations, thereby impairing his
earning capacity, which impairment may be permanent, all to his great financial damage
and loss.

61.     As a further result of the foregoing, the  plaintiff has been prevented from
and hindered in performing his customary activities, and he has been unable to enjoy
the pleasures of life, all of which may continue for an indefinite time in the future.

62.     As a further result of the foregoing, the plaintiff has incurred various
incidental expenses and he may continue to incur such expenses for an indefinite time
in the future.

63.     As a direct and proximate result of the unreasonable dangerous defects of subject product, plaintiff was caused to suffer the serious personal injuries set forth above, and to endure great pain and suffering.

64.     Defendant is strictly liable for all of the injuries and dangers sustained by the plaintiff, JAMES ROY.

WHEREFORE, Plaintiff, JAMES ROY, demands judgment against the defendant, GILES & RANSOME, INC. d/b/a RANSOME RENTALS, in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with interest, costs, attorneys' fees and damages for delay.

STEVEN M. LIPSCHUTZ, P.C.

BY: _____
        Steven M. Lipschutz, Esquire
        Attorney for Plaintiff

DATED: _1-27-09_____

17

## VERIFICATION

_____JAMES Loy_____, hereby verifies that he/she is the plaintiff in the foregoing matter, duly authorized to take this verification and contends that the statements contained in the foregoing pleading are true and correct to the best of his/her knowledge, information and belief.

The undersigned understands that said statements are made subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities.

DATED:___1-27 09___

# EXHIBIT "B"

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 1211958 (E.D.Pa.)
**(Cite as: 2004 WL 1211958 (E.D.Pa.))**

C
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
James and Carol MORSE
v.
Carlos JIMENEZ and Nassau Candy Company
**No. Civ.A.01-1787.**

June 1, 2004.

Michael D. Rubin, Southampton, PA, for Plaintiffs.

Diane L. Scialabba, Campbell Edwards & Conroy
P.C., Wayne, PA, Jeffrey H. Quinn, Dickie, Mc-
Camey & Chilcote, PC, Phila., PA, for Defendants.

*MEMORANDUM AND ORDER*

HART, Magistrate J.

**\*1** The Defendants have filed a Motion to Compel
Discovery Responses in this diversity motor vehicle
accident case. After discussing scheduling issues
with counsel on the telephone last week, the court
was led to believe that counsel could resolve the is-
sues presented in this motion. Unfortunately, we
have been advised that counsel's efforts were not
entirely successful.

In the Motion, the Defendants sought responses to
supplemental interrogatories, a number of docu-
ments relating to Mr. Morse's application for Social
Security benefits, and all mental health records
from January, 1999, through the present. By tele-
phone message, defense counsel advised the court
that although Plaintiff has responded to the supple-
mental interrogatories, he has produced only min-
imal documentation regarding his Social Security
application and has not produced his mental health
records. For the reasons that follow, the Defend-
ants' motion shall be granted in part and denied in

part.

During the telephone conference last week,
Plaintiffs' counsel stated that he had withdrawn any
claim relating to his client's mental health. There-
fore, he claims the mental health records are irrel-
evant. Defense counsel argued that the records are
relevant because Plaintiff's depression provided a
partial basis for Plaintiff's application for and re-
ceipt of Social Security disability benefits.

Because we find that permitting evidence regarding
Mr. Morse's Social Security application and bene-
fits would usurp the jury's role in determining the
extent of Mr. Morse's injuries, we will not permit
any reference to the Social Security application,
proceeding, or Mr. Morse's receipt of benefits.[FN1]
Thus, the documentation sought by the Defendants
regarding the Social Security application, corres-
pondence, and mental health records are irrelevant
to this proceeding.

> FN1. We also note that evidence of Mr.
> Morse's Social Security disability benefits
> is also inadmissible pursuant to the collat-
> eral source rule, which prohibits evidence
> of collateral source benefits to offset dam-
> ages. *Lee v. Consolidated Rail Corp.,* 1995
> WL 734108 \*4 (E.D.Pa. Dec.5, 1995)
> (citing *Tipton v. Socony Mobil Oil Co.,* 375
> U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963);
> *Eichel v. New York Central Railroad Co.,*
> 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d
> 307 (1963)).

In this case, the court has assumed that Mr. Morse's
alleged disability would play a pivotal role in the
jury's determination of damages. This assumption
was further bolstered during the telephone confer-
ence last week when both sides referred to a "life
plan" prepared for trial by the Plaintiff. On this
pivotal issue, an administrative agency has made
the determination that Mr. Morse is disabled. We
note that the Social Security Administration's de-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1211958 (E.D.Pa.)
**(Cite as: 2004 WL 1211958 (E.D.Pa.))**

cision is based on a completely different standard of review and included evidence of impairments that are not relevant to the civil case before us.

The role of the court in assessing the admissibility of this evidence is similar to that which applies when we consider expert testimony. In assessing whether an expert witness will be permitted to express an opinion, the court must consider whether the expert's testimony will usurp the role of the jury in making credibility determinations or deciding the ultimate issues in the case, *see Whitmill v. City of Philadelphia,* 29 F.Supp.2d 241, 247 (E.D.Pa.1998) (quoting *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir.1991)). Here, although no expert would take the stand, expert testimony would be given through an administrative decision, granting Mr. Morse disability benefits. Permitting the admission of the Social Security determination of disability would confuse the jury regarding this issue, if not usurp its role entirely. Hence, discovery related to the Social Security proceedings is irrelevant, as are Plaintiff's mental health records since counsel has withdrawn that issue from the case.

**\*2** To the extent the Defendants sought and have not yet received documents regarding seminars Plaintiff attended, employment information, and documents regarding the Plaintiff's experts, the motion will be granted.

An appropriate Order follows.

### ORDER

AND NOW, this 1st day of June, 2004, upon consideration of the Defendants' Motion to Compel Discovery Responses and Disclosures, and after consideration of the representations made by counsel during a telephone conference, IT IS HEREBY ORDERED that the Motion is GRANTED IN PART and DENIED IN PART. Plaintiffs shall provide documents responsive to Request # 2, regarding seminars attended by the Plaintiff, Request # 7, regarding Plaintiff's work for Lauria Visuals,

and Request # 8, regarding expert witness publications. In all other respects, the Motion is DENIED. IT IS FURTHER ORDERED that neither side shall present any evidence regarding Plaintiff's application for, the proceedings surrounding, or his receipt of Social Security disability benefits.

E.D.Pa.,2004.
Morse v. Jimenez
Not Reported in F.Supp.2d, 2004 WL 1211958 (E.D.Pa.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT "C"

Westlaw.

2007 WL 2687657, 82 Pa. D. & C.4th 363
(Cite as: 2007 WL 2687657 (Pa.Com.Pl.), 82 Pa. D. & C.4th 363)

**H**

Court of Common Pleas of Pennsylvania, Phil-
adelphia County.
Holmes[FN1]

> FN1. Darryl Holmes was also a plaintiff in
> this matter but died prior to trial. No estate
> was raised on his behalf.

v.
University of Pennsylvania Health System
**No. 0349.**

June Term, 2004
March 28, 2007[FNa1]

> FNa1. *Editor's Note:* Appealed to the Su-
> perior Court at docket no. 231 EDA 2007.

West Headnotes

**Health 198H ⟜820**

198H Health
    198HV Malpractice, Negligence, or Breach of
Duty
        198HV(G) Actions and Proceedings
            198Hk815 Evidence
                198Hk820 k. Admissibility. Most
Cited Cases
The court precluded reference to plaintiff's Social
Security disability award in a medical malpractice
action because the issues in the two proceedings
were different, required different burdens of proof,
and defendants were not parties to the administrat-
ive proceeding.
*364 *James R. Radmore,* for appellant.

*Michael J. Burns,* for appellees.

QUIÑONES ALEJANDRO, *J.*

INTRODUCTION

On June 8, 2004, Yvette Holmes (plaintiff) filed a
civil action against the University of Pennsylvania
Health System, the Trustees of the University of
Pennsylvania, Carmen Williams M.D., Beth W.
Rackow M.D., Premal Thaker M.D., Peter Craig
M.D., Linda Chen M.D., and Angelina Castor
M.D.,[FN2] (collectively, defendants) averring
claims of professional liability arising from a hys-
terectomy performed on June 14, 2002, to address a
painful endometriosis condition. The jury found in
favor of defendants.

> FN2. On May 24, 2006, the Honorable An-
> nette Rizzo granted a motion for summary
> judgment and dismissed, with prejudice,
> Peter Craig M.D., Linda Chen M.D., and
> Angelina Castor M.D., as party defendants.

*365 In this appeal, plaintiff essentially argues that
this trial judge erred in precluding the use of a So-
cial Security disability award as proof of her claim;
in not charging on the vicarious liability of defend-
ant University of Pennsylvania Health System
(UPHS); and in failing to include defendant UPHS
on the verdict sheet. This trial judge disagrees.

SUMMARY OF THE FACTS AND THE PRO-
CEDURAL HISTORY

As background information, on October 6, 2006, a
jury was selected to decide this matter. The present-
ation of trial testimony was scheduled to begin on
October 9, 2006. Prior to the commencement of the
trial testimony, numerous motions in limine were
argued and decided, including, inter alia, plaintiff's
motion expounding that defendants were collater-
ally estopped from re-litigating a decision rendered
by a Social Security Administrative Law Judge
which found that plaintiff was entitled to Social Se-
curity disability benefits as of June 14, 2002
(coincidently, the date of her hysterectomy). This
trial judge denied said motion.

From the trial testimony subsequently elicited, it is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2007 WL 2687657, 82 Pa. D. & C.4th 363
**(Cite as: 2007 WL 2687657 (Pa.Com.Pl.), 82 Pa. D. & C.4th 363)**

reasonable to infer that the jury considered the following evidence:

"As background medical information, plaintiff testified that starting around the age of 14, she complained of chronic problems with ovarian cysts, endometriosis, and pelvic inflammatory disease.[FN3] She described these conditions as very painful for which she was prescribed Percocet. [FN4]

    FN3. N.T. 10/11/2006, 42:22-44:12.

    FN4. *Id.* at 44:17-45:12.

**\*366** "Sometime in the 1990s, plaintiff was involved in a motor vehicle accident[FN5] which caused her to suffer chronic back pain during the period of 1994 through 2001.[FN6]

    FN5. N.T. 10/11/2006, 10:19-21.

    FN6. N.T. 10/12/2006, 166:2-167:18.

"Defendant highlighted and plaintiff acknowledged three instances when plaintiff was treated for complaints affecting her left leg prior to her hysterectomy; to wit: (1) in May 1994, plaintiff was diagnosed with a back strain and prescribed Flexeril [FN7] following complaints of a constant aching pain of three weeks duration in the left side of her back which radiated down into her left knee and caused numbness; (2) in July 1994, she was treated for complaints of a slight tingling in the back of her left calf;[FN8] and (3) in April 1998, she was examined in the emergency room for complaints of pain of 10 days duration in the pelvic area against the spine and lower back which radiated into the left leg and hip.[FN9]

    FN7. N.T. 10/11/2006, 29:16-24.

    FN8. *Id.* at 31:22-33:7.

    FN9. *Id.* at 34:10-20.

"As to her painful endometriosis, plaintiff testified that she had undergone numerous unsuccessful laparoscopic procedures. In April 2002, plaintiff decided to undergo a hysterectomy as the 'last option' to deal with her pain.[FN10] The procedure was performed on June 14, 2002, by defendant doctors Williams, Thacker, and Rackow, at defendant Hospital of the University of Pennsylvania.[FN11]

    FN10. *Id.* at 47:18-23.

    FN11. N.T. 10/10/2006, 61:19-22, 63:18-22.

"Plaintiff testified that when she awakened from the procedure, she experienced excruciating pain in the areas of her back, groin, stomach, and left side radiating down **\*367** to her feet,[FN12] and immediately knew that she could not move her left leg,[FN13] nor walk. Plaintiff emphasized that from the time of the surgery until her first follow-up visit a month later, she was barely walking.[FN14] Subsequently, plaintiff's condition progressively deteriorated, requiring first the use of a leg brace, then a walker, a scooter, and ultimately a wheelchair. Plaintiff stated that she needs a shower bench due to an inability to walk normally; and diapers and a bedside toilet chair due to a lack of bladder control.[FN15] To assist her, a nurse comes to her home every day for eight hours and helps with meals, laundry, medication, dressing, bathing, and getting into and out of bed. [FN16]

    FN12. N.T. 10/11/2006, 56:8-15.

    FN13. *Id.* at 57:6-12.

    FN14. *Id.* at 57:22-24, 58:5-8.

    FN15. *Id.* at 20:20-28:21.

    FN16. *Id.* at 27:23-28:8.

"Plaintiff's medical and physical conditions following the surgery were described differently in the medical records and by defendant-physicians' testimonies. For example, the medical chart reveals that: (1) on June 16, 2002, Dr. Thacker noted that plaintiff was ambulating without assistance;[FN17] (2) later that day, Dr. Williams noted that plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2007 WL 2687657, 82 Pa. D. & C.4th 363
**(Cite as: 2007 WL 2687657 (Pa.Com.Pl.), 82 Pa. D. & C.4th 363)**

was out of bed without assistance and voiding freely;[FN18] (3) on June 17, 2002, Dr. Rackow noted that plaintiff was ambulating without assistance and had a normal gait; [FN19] and (4) the discharge summary dated June 18, 2002, and signed by plaintiff, noted that she was fully ambulatory, and left the hospital walking. [FN20] *368 Dr. Williams also testified that had plaintiff been unable to walk at any time during her post-operative hospital stay, '[i]t would have been noted by multiple people. And there would have been an entire work-up to figure out why and how we could help her.' [FN21]

FN17. N.T. 10/11/2006, 68:11-69:11.

FN18. *Id.* at 70:4-15.

FN19. *Id.* at 71:12-24.

FN20. N.T. 10/12/2006, 84:22-85:23.

FN21. *Id.* at 237:2-9.

"When confronted with this contradictory evidence on cross-examination, plaintiff testified that she believed that there was some sort of conspiracy with the hospital personnel, stating those notations were false, the testimony was lies, that 'they have a job to perform and they write down what's being asked of them to write down,' and that after her surgery, she had difficulty obtaining her record because '[i]t was always a lawyer had them.'"[FN22]

FN22. N.T. 10/11/2006, 66:11-20, 69:6-11, 70:11-20, 71:10-24; N.T. 10/12/2006, 80:11-24, 81:10-22.

On October 13, 2006, the jury returned a verdict in favor of defendants.

On October 23, 2006, plaintiff filed a post-trial motion. Defendants filed a response, and on January 10, 2007, oral argument on these pleadings was heard. On January 16, 2007 this trial judge denied plaintiff's motion for a new trial.

Dissatisfied, on January 23, 2007, plaintiff filed this appeal.

## ISSUES

In response to an order issued on February 1, 2007, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), plaintiff on February 7, 2007, filed of record and served onto this trial judge the following *369 verbatim statement of matters complained of on appeal, averring:

"(1) The lower court erred in denying the motion for a new trial when it refused to permit plaintiff to cross-examine defendant's medical expert as to the findings of a Social Security Administration Administrative Law Judge that plaintiff was entitled to a period of disability beginning on June 14, 2002, the date of the surgery involved in this litigation.

"(2) The lower court erred in denying the motion for a new trial when it refused to include University of Pennsylvania Health System, a named defendant, on the verdict sheet where said defendant remained a party to the action and had not been removed in any pretrial proceeding nor had there been a motion for a directed verdict in favor of said defendant during the trial.

"(3) The lower court erred in denying the motion for a new trial when it refused to charge the jury on whether defendant University of Pennsylvania Health System should be held vicariously liable for the acts of his employees.

"(4) The lower court erred in denying the motion for a new trial when its charge to the jury inadequate [sic] by failing to include the issue of vicarious liability to the prejudice of plaintiff."

## LAW AND DISCUSSION

As stated, plaintiff claims that this trial judge erred when precluding certain evidence, instructing the jury, and denying her post-trial motion on those al-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2007 WL 2687657, 82 Pa. D. & C.4th 363
**(Cite as: 2007 WL 2687657 (Pa.Com.Pl.), 82 Pa. D. & C.4th 363)**

legations. The standard of review of a ruling on a post-trial motion requesting a new trial is well-settled. The decision to *370 grant or deny a request for a new trial is within the sound discretion of the trial court. *Andrews v. Jackson*, 800 A.2d 959, 961 (Pa. Super. 2002), *appeal denied*, 572 Pa. 694, 813 A.2d 835 (2002). An appellate court may not disturb a trial court's ruling unless the trial court palpably abused its discretion or committed an error of law. *Neison v. Hines*, 539 Pa. 516, 520, 653 A.2d 634, 636 (1995); *Andrews*, 800 A.2d at 961. An abuse of discretion is not merely an error of judgment. Discretion is abused if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will. See *Fanning v. Davne*, 795 A.2d 388, 393 (Pa. Super. 2002), citing, *Paden v. Baker Concrete Construction Co. Inc.*, 540 Pa. 409, 412, 658 A.2d 341, 343 (1995). However, an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion. The court's action requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill will, or such lack of support as to be clearly erroneous. *Fanning*, 795 A.2d at 393.

When deciding to grant or deny a post-trial motion for a new trial, the trial court must engage in a two-part analysis: (1) whether a mistake occurred at trial; and (2) whether the mistake was prejudicial to the moving party. *Slappo v. J's Development Associates Inc.*, 791 A.2d 409, 414 (Pa. Super. 2002). A new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Neison*, 539 Pa. at 520, 653 A.2d at 636. However, a new trial should not be granted merely because of a conflict in testimony or some irregularity which occurred during trial or because the trial judge, on the same facts, would have arrived at a *371 different conclusion. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 467, 756 A.2d 1116, 1122 (2000). The moving party must demonstrate to have suffered prejudice from the mistake. *Id.* at 467, 756 A.2d at 1122. (citations omitted)

Here, plaintiff initially argues that this trial judge erred in denying her motion in limine and, thereby, precluding the use of her Social Security disability benefit award as proof of defendants' negligence and her damages, and/or precluding its use for impeachment and cross-examination of defendants' medical experts. Plaintiff contends that an administrative law judge from the Social Security Administration found her disabled and entitled to a period of disability commencing on June 14, 2002, the date of the alleged malpractice. Plaintiff further contends that this administrative decision is proof of defendants' negligence. Plaintiff is mistaken. This administrative determination is not at issue in this matter. What is at issue is whether defendants' were negligent in the care rendered to plaintiff at the time of her hysterectomy.

In denying plaintiff's motion in limine, this trial judge relied, in part, on *Frederick v. Action Tire Co* ., 744 A.2d 762, 766 (Pa. Super. 1999), which holds that a Social Security ruling is not preclusive as to disability status in a negligent action, and that collateral estoppel is only applicable when: "An issue decided in a prior action is identical to one presented in a later action; [t]he prior action resulted in a final judgment on the merits; [t]he party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and [t]he party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." See also, *372Rue v. K-Mart Corporation*, 552 Pa. 13, 16, 713 A.2d 82, 84 (1998).

Administrative Law Judge Irving A. Pianin's decision clearly indicates: "Although the claimant's ability to ambulate effectively has deteriorated since her surgery in June 2002, *there is no specific determination of etiology causing* the significant pain and weakness experienced by the claimant subsequent to her hysterectomy . . . ." (This trial judge's emphasis.) Since the issue of the causation of plaintiff's disability was not before the administrative law judge, nor were defendants part[ies] in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2007 WL 2687657, 82 Pa. D. & C.4th 363
(Cite as: 2007 WL 2687657 (Pa.Com.Pl.), 82 Pa. D. & C.4th 363)

the Social Security matter, nor did they have the opportunity to litigate any aspect of plaintiff's Social Security claim, this trial judge opines that defendants were not estopped from defending themselves in this malpractice action. Clearly, the issues at the administrative hearing and the issues at trial were very different, and required different burdens of proof. The administrative decision, which found plaintiff disabled from substantial gainful activity, did not determine the source or cause of her disability. At trial, the jury was asked to determine whether defendants were (individually or collectively) negligent in their care of plaintiff and, if so, whether their negligence was a factual cause of her alleged injuries, issues not before the administrative law judge. This trial judge opines that the motion in limine was properly denied.

Plaintiff contends, however, that defendants' experts, Larry James Copeland M.D. and Terry Heiman-Patterson M.D., both testified on direct examination that they reviewed plaintiff's Social Security records as part of their assessment of the documents submitted to them and, therefore, this opened the door for the use of the Social *373 Security record and the administrative law judge's findings. In addition, plaintiff contends that Dr. Heiman-Patterson also testified incorrectly on cross-examination that plaintiff had been denied Social Security benefits. Plaintiff argues that because of these statements, plaintiff should have been allowed to cross-examine Dr. Heiman-Patterson using the Social Security records, including the disability award.

A careful review of the trial transcript reveals that defendants presented Dr. Copeland as their expert obstetrician gynecologist. Dr. Copeland was asked on direct-examination to briefly list the materials reviewed prior to preparing his report. In response, Dr. Copeland listed the records reviewed, which included plaintiff's Social Security records. On cross-examination, plaintiff's counsel did not ask him any questions on this topic nor did counsel preserve any specific issue regarding Dr. Copeland's testimony as it relates to the Social Security benefits received.

Under these circumstances, plaintiff waived this issue for appellate review as to Dr. Copeland. See *Harman ex rel. Harman v. Borah*, 756 A.2d 1116 (Pa. Super. 2000), holding that a party waives an issue concerning perceived trial court error if the party fails to preserve the issue with a timely and specific objection at trial.

As to the testimony of Dr. Heiman-Patterson, defendants' neurology expert, on direct examination Dr. Heiman-Patterson was also asked to briefly identify the materials reviewed prior to issuing her report. Dr. Heiman-Patterson simply stated that the Social Security records were within the materials reviewed. [FN23] Dr. Heiman-Patterson*374 did not reference the administrative law judge's findings, nor did she offer any testimony and/or opinion regarding whether plaintiff met the standards of "disability" or when any "disability" may have arisen for the purpose of Social Security benefits.

FN23. N.T. 10/12/2006, 157:12-158:3.

In response to a question posed during cross-examination, Dr. Heiman-Patterson testified that she believed the benefits had been denied. Despite this trial judge's ruling on the motion in limine, counsel for plaintiff attempted (on several occasions) to introduce evidence of the Social Security disability award in an attempt to establish her claim against defendants. An excerpt of the trial transcript reveals the following:[FN24]

FN24. N.T. 10/12/2006, 206:25-209:6.

"Q. What parts-you commented on the Social Security records. What part of the Social Security records did you review?

"A. There were some disability records, some submissions. It was one of the denials. I don't have those with me.

"Q. You reviewed the denials. Did you review the findings by the administrative law judge-

"Mr. Lynch. Objection. Your honor. May we be

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

2007 WL 2687657, 82 Pa. D. & C.4th 363
**(Cite as: 2007 WL 2687657 (Pa.Com.Pl.), 82 Pa. D. & C.4th 363)**

heard at sidebar?

"The Court. Objection sustained. We are not going into that."

Plaintiff further argues that she should have been permitted to question Dr. Heiman-Patterson regarding the doctor's statement that Social Security benefits had been denied, since the jury was left with the impression that plaintiff's injuries were not serious enough to qualify for disability benefits and, therefore, this trial judge committed**375** a reversible error. Plaintiff relies on *Boucher v. Pennsylvania Hospital*, 831 A.2d 623 (Pa. Super. 2003), wherein the appellate court held that an expert may express an opinion which is based on material not in evidence, including other expert opinions, where such material is of a type customarily relied on by experts in his or her profession. Plaintiff notes that under *Primavera v. Celotex Corp.*, 415 Pa. Super. 41, 51, 608 A.2d 515, 520 (1992), such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness.

Plaintiff, however, loses sight of the fact that Dr. Heiman-Patterson did not state that she had relied upon the administrative law judge's ruling to form her opinion. Neither did she give any specific testimony referring to the administrative law judge's decision. It was counsel who raised the subject matter to the expert doctor and reiterated the denial of benefits. The record supports this trial judge's belief that plaintiff's line of questioning was an attempt to circumvent this trial judge's ruling on the motion in limine. No one doubts that an administrative law judge found plaintiff disabled from engaging in substantial gainful activity. However, that finding is not relevant to the issue of whether defendants were negligent during the hysterectomy; that is, whether defendants breached the standard of care and whether that breach was a factual cause of plaintiff's injuries. This administrative finding is not something that a neurologist would generally rely on to determine whether medical negligence occurred. This trial judge opines that no error was committed in denying the motion in limine and when ruling on subsequent objections which dealt with the subject matter of said motion.

*\*376 Verdict Sheet and Jury Charge*

Next, plaintiff argues that this trial judge erred in refusing to include defendant University of Pennsylvania Health System (UPHS) on the verdict sheet and in refusing to charge the jury on the vicarious liability of defendant UPHS for the alleged negligent acts of its employees. Plaintiff states numerous reasons why this trial judge erred and contends that these constituted reversible errors.

As to the issue of vicarious liability per se, it first arose during the charging conference when the charge was requested. The charging conference occurred outside the presence of the jury prior to the conclusion of the presentation of all the trial testimony. Plaintiff had previously asserted that defendant UPHS was defendant-physicians' employer. Defendant-physicians denied this allegation and asserted that their employer was defendant Trustees of the University of Pennsylvania.[FN25] After hearing argument for and against the inclusion of the charge, this trial judge held the issue under advisement. Relevant to this discussion is the following excerpt of the transcript: [FN26]

> FN25. See defendants' answer to plaintiff's third amended complaint, paragraph 10.

> FN26. N.T. 10/13/2006, 9:2-11:19.

"The Court: Well, I thought, again, that there was an agreement that if any of the defendant physicians are found liable, then it's understood that the University of Pennsylvania Health System will be liable. That's agreed.

"Mr. Lynch: That's correct, your honor. We will stipulate to the correct employer, whether it's the Trustees\*377 of the University of Pennsylvania or the UPS [sic] Health System, whoever that will need to be for legal purposes, we'll stipulate to that.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

2007 WL 2687657, 82 Pa. D. & C.4th 363
**(Cite as: 2007 WL 2687657 (Pa.Com.Pl.), 82 Pa. D. & C.4th 363)**

Then the court could mold the verdict accordingly.

"The Court: I don't really think in this case it's important to charge the jury on vicarious liability. Tell me why you think it's important.

"Mr. Radmore: Because I'm concerned the jury will have empathy for the individual doctors if they don't understand that whatever-if there's any compensation it gets paid by the hospital, not by the doctors. And that's what my concern is.

"The Court: I have never thought that, at least the jurors in my courtroom, are overly sympathetic to doctors. If they believe there was negligence, my jurors have never hesitated to find it against doctors. But if you feel that is important for your case, then I will charge that-but it's not only-

"Mr. Radmore: It's all of them, correct. As far as the-I may, at the end of their testimony, agree to let the residents out. I'm not sure what they're going to testify to because, you know, the attending is responsible for what they do anyway. That's why I just put that in. But if I don't, then I would like each one.

"Mr. Lynch: Your honor, my position is that Mr. Radmore is not quite correct when he talks about the money coming from the institution not the doctor. Obviously, we're not talking necessarily ab[o]ut personal liability here, although that's a conceivable possibility in the end. But the insurance policies involved here are both the individual physician, at least in Dr. Williams' case, as well as the institution. To say that really he needs to have the jury charged on the institutions in order to take the *378 light off of where the money is coming from is not quite accurate. Finally, your honor, I think that charging on vicarious liability myself confuse[s] the jury where they're not going to be asked in the questionnaire, for good and sufficient reasons. I don't think there's any necessity for vicarious liability. We're essentially conceding that if there's a verdict against one of the physicians, that it can be molded to include the institution involved as the

employer on the basis of vicarious liability.

"The Court: I'll hold this under advisement. I'll think about it. My inclination is not to charge. But I'm thinking about it, just to let you know.

"Mr. Radmore: Okay, your honor."

As to the trial testimony, none of the defendant-physicians were asked nor did they offer testimony as to the identity of their employer at the time of the incident. A review of the trial transcripts reveals that vague references were made to defendant UPHS, and even less references were made of defendant Trustees of the University of Pennsylvania. None of these vague references dealt with the employer-employee relationship of defendant-physicians and the institutions. There is no testimony establishing which entity is the proper employer. Under the circumstances, as plaintiff failed to present evidence as to the identity of the proper employer, the charge of vicarious liability was properly excluded from the jury charge.

Notwithstanding this factual omission, defendant-physicians were willing to stipulate that *if* they were found to be negligent and said negligence was a factual/substantial cause of the injury suffered, their employer would be vicariously liable for their conduct, and this trial judge would mold the verdict to include a judgment *379 against the employer on the basis of vicarious liability. Plaintiff refused this stipulation.

Prior to charging the jury, this trial judge noted, outside of the presence of the jury: "For the completion of the record, I am not charging vicarious liability. I think that was the only one I had under advisement." [FN27] Plaintiff did not voice any objections to this ruling at *any* time, despite having been provided with an opportunity to do so prior to the jury being excused to deliberate.[FN28] See Pa.R.C.P. 227(b), which provides that all exceptions to the charge of the jury shall be taken before the jury retires. *Brown v. Philadelphia Tribune Co.,* 447 Pa. Super. 52, 668 A.2d 159 (1995), which held

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

2007 WL 2687657, 82 Pa. D. & C.4th 363
(Cite as: 2007 WL 2687657 (Pa.Com.Pl.), 82 Pa. D. & C.4th 363)

that the failure of trial counsel to specifically object to jury instruction waived issue on review. Counsel for the parties responded on the record that there was no need for a sidebar. Consequently, it is this trial judge's opinion that plaintiff has waived this issue for appellate review.

FN27. N.T. 10/13/2006, 177:13-16.

FN28. *Id.* at 214:13-16.

In plaintiff's other argument of error by this trial judge, plaintiff relies on the holding of *Herbert v. Parkview Hospital*, 854 A.2d 1285 (Pa. Super. 2004), to contend that this trial judge erred in not including Standard Jury Instruction 4:02, vicarious liability, as a jury charge. Plaintiff's reliance is misplaced. The matter of *Herbert* concerns corporate negligence, an independent cause of action or basis for finding of liability against a hospital which was not pled by plaintiff.

Nonetheless, plaintiff contends that not charging on vicarious liability caused the deliberations to be incomplete, and the jury to be confused as evidenced by the question submitted during deliberation inquiring which *380 doctor performed which task in the surgery. It appears that plaintiff interpreted the jury's inquiry to mean that *had* the jury received an instruction on vicarious liability and *had* defendant UPHS been included on the verdict slip, "this would likely have not been a concern," as "[w]hatever the specific task may have been for a particular physician would not have been as important because the ultimate liability would be of U of P." [FN29] This convoluted argument seems to suggest that if the jury had known that defendant-physicians' employers would be the one responsible or liable for the negligence of defendant-physician(s), the jury would not have been interested in nor cared about the culpability of the individual physician nor, perhaps, of the question of whether there was negligence on the part of any of the defendant-physicians. This argument lacks merit.

FN29. Brief of plaintiff in support of con-

cise statement of matters complained of pursuant to Rule of Appellate Procedure 1925(b), section III, B.

Assuming arguendo that this trial judge's jury instructions were in error, a new trial will be awarded only where the jury instruction might have prejudiced the appellant. *Lilley v. Johns-Manville Corp.*, 408 Pa. Super. 83, 95, 596 A.2d 203, 209 (1991). If the jury had found any of the individual defendants to be liable, the verdict would have been molded against the employer as well, by agreement. As the jury found no liability against any individual defendants, no liability could have been entered against the employer and, therefore, there is no prejudice. Even had defendant UPHS been on the verdict slip, defendant UPHS is only liable if an individual defendant-physician was negligent, and said negligence was a factual or substantial factor of the injury suffered. The *381 jury found none of the defendant-physicians was negligent. Any error in not including the institution was, at most, a harmless error. Under the cited case law and analysis, a new trial is not warranted.

CONCLUSION

Based on the foregoing discussion, this trial judge is of the opinion that no errors and/or abuses of discretion were committed. This trial judge respectfully requests that this appeal be dismissed; and that the order dated January 16, 2007, and the jury verdict be affirmed.

Pa.Com.Pl. 2007.
Holmes v. University of Pennsylvania Health System
2007 WL 2687657, 82 Pa. D. & C.4th 363

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

9051-08
**MAYFIELD, TURNER, O'MARA,**
**DONNELLY & McBRIDE, P.C.**
By: W. Thomas McBride
Identification No. 39293
By: Bennett E. Langman
Identification No. 205185
1617 J.F.K. Blvd., Suite 932
Philadelphia, PA 19103
(215) 564-0500
*Attorneys for Defendant,*
*Sullair Corporation*

| | |
|---|---|
| James Roy, | : UNITED STATES DISTRICT COURT |
|          Plaintiff | : EASTERN DISTRICT OF PENNSYLVANIA |
|          v. | : |
| Sullair Corporation and | : |
| Giles & Ransome, Inc. d/b/a | : 2:09-1486 |
| Ransome Rental, | : |
|          Defendants. | : |

## CERTIFICATE OF SERVICE

  I, Bennett E. Langman, Esquire, attorney for defendant Sullair Corporation, hereby certify

that a true and correct copy of the within *Motion in Limine* was served on the following parties via the

United States District Court's Electronic Filing System, on the date set forth below:

Steven M. Lipschutz, Esquire
1800 J.F.K. Blvd., 14th Floor
Philadelphia, PA 19103

Marc B. Zingarini, Esquire
Michael B. Pullano, Esquire
Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP
2000 Market Street, 13th Floor
Philadelphia, PA 19103

      **MAYFIELD, TURNER, O'MARA,**
      **DONNELLY & McBRIDE, P.C.**


    BY: _____
      Bennett E. Langman

DATE: